# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

JAA DOE,

               Plaintiff,

v.

NEIL PORTNOW; NATIONAL ACADEMY OF
RECORDING ARTS & SCIENCES, INC.; and
DOES 1-5 whose identities are unknown to
Plaintiff,

               Defendants.

Index No. _____

***EX PARTE* AFFIRMATION IN
SUPPORT FOR AN ORDER TO
SHOW CAUSE FOR LEAVE TO
FILE A CIVIL ACTION USING A
PSEUDONYM**

JEFFREY R. ANDERSON, an attorney duly admitted to practice law in the State of New York, hereby affirms under the penalty of perjury as follows:

1.      My firm represents the Plaintiff in this action, and as such, I am fully familiar with the facts and circumstances of this matter.

2.      Pursuant to CPLR § 2217(b), no prior application has been made to this or any other Court for the relief requested herein.

3.      Plaintiff's action arises from sexual assault and is brought pursuant to the New York City Gender Motivated Violence Protection Law, New York City Administrative Code, Chapter 11 §§ 10-1101 – 10-1107 ("GMVA"), which revives previously time-barred claims arising from conduct which constitute crime(s) of violence motivated by gender.

4.      Plaintiff's action is additionally brought pursuant to CPLR § 214-j, the Adult Survivors Act ("ASA"). The ASA revives previously time-barred claims arising from sexual assault for victims who were at least 18 years old.

5.      As alleged in Plaintiff's Complaint, attached hereto as **Exhibit A**, Plaintiff sustained serious and permanent personal injuries as a result of being sexually assaulted. The nature of Plaintiff's claims give rise to significant privacy concerns that support the use of a

1

Case 1:24-cv-00345-AT    Document 1-2    Filed 01/17/24    Page 3 of 26

pseudonym.

### A. New York Law Allows Survivors of Sexual Assault to Proceed Under a Pseudonym.

6.      "The determination of whether to allow a plaintiff to proceed anonymously requires the court to use its discretion in balancing plaintiff's privacy interest against the presumption in favor of open trials and against any potential prejudice to defendant." *Anonymous v. Lerner*, 124 A.D.3d 487, 487 (1st Dept 2015) (internal quotation and citations omitted).

7.      A party should be granted the right to proceed anonymously in a civil action "where a substantial privacy interest is involved" concerning "highly sensitive matters" including "social stigmatization," *Doe v. N.Y.U.*, 786 N.Y.S.2d 892, 903 (Sup. Ct. N.Y. Cnty. 2004), and where identification of the plaintiff poses a risk of mental or physical harm, harassment, ridicule, or personal embarrassment. *Doe v. Szul Jewelry*, 2008 N.Y. Slip Op. 31382[U], 2008 WL 215893 (Sup. Ct. N.Y. Cnty. May 13, 2008); *see also* Civil Rights Law § 50-b(1) ("The identity of any victim of a sex offense…shall be confidential.").[1] This is precisely the circumstance which warrants the right to proceed anonymously.

8.      As it relates to the recently enacted ASA, this Court has granted the same relief requested by the Plaintiff here in another case brought by an adult survivor. *See Doe v. Lewis*, 2023 WL 4305005 (Sup. Ct. N.Y. Cnty. June 26, 2023). In that case, the Court found that allegations of sexual assault are a "deeply personal and sensitive subject matter," entitling the adult plaintiff to

---

[1] Although, historically, courts have afforded protection to survivors of sexual offenses under Civil Rights Law § 50-b(1) where there is an arrest and prosecution or an investigation, New York courts have also applied this statute in civil cases, like this one, allowing a plaintiff to proceed under a pseudonym. *See Doe v. N.Y.U.*, 786 N.Y.S.2d 892, 904 (Sup. Ct. N.Y. Cnty. 2004) (granting plaintiffs' application for an order permitting plaintiffs to file an amended complaint to replace their names with pseudonyms pursuant to Civil Rights Law § 50-b); *see also Jane Doe 1 v. Beth Israel Med. Ctr.*, 2018 N.Y. Slip Op. 31964(U), 1 (Sup. Ct. N.Y. Cnty. Aug. 14, 2018) (granting plaintiff's motion pursuant to § 50-b to proceed under a pseudonym).

2

proceed under a pseudonym.

9.      Similarly, in numerous cases filed under the Child Victims Act ("CVA"), which

the ASA was modelled after[2], this Court have consistently permitted adults sexually abused as

children to maintain their claims anonymously. *See ARK31 Doe v. Archdiocese of New York*, 2019

N.Y. Slip Op. 33350[U], 2019 WL 5858094 (Sup Ct, N.Y. Cnty. 2019); *ARK1 Doe v. Archdiocese*

*of New York, et al.,* Index No. 950035/2019 (Sup. Ct. N.Y. Cnty. Oct. 8, 2019); *ARK99 Doe v. The*

*Boy Scouts of America, et al.*, Index No. 950096/2019 (Sup. Ct. N.Y. Cnty Oct. 2, 2019).

10.      In *ARK31 Doe*, this Court specifically recognized a balance between the plaintiff's

privacy interest and the presumption in favor of open trials and against any prejudice to defendants.

2019 N.Y. Slip Op. 33350[U], 2019 WL 5858094 (Sup. Ct. N.Y. Cnty. Nov. 8, 2019). Considering

all factors, the Court held that "it is axiomatic that plaintiff should be afforded the protection of

anonymity" given that the case "involves alleged acts that will no doubt center on information

about plaintiff of a sensitive and highly personal nature." *Id*. at *3. In regard to the potential

prejudice, the Court noted:

> Aesop, the Greek fabulist and storyteller, is credited with having said the oft-repeated
> aphorism that "the injuries we do and those we suffer are seldom weighed in the same
> scales." That principle applies here, where the legislature has codified specific protections
> for alleged victims of sexual assault that do not apply to alleged perpetrators of that abuse.
> While that principle may be viewed by defendant as unfair, it nonetheless is the state of the
> law by which this court is bound. Defendant overlooks the logic that underlies the present
> state of the law. To be sure, it has long been held that the victims of sexual assault stand in
> an inimitable position. The fortification sought by plaintiff here represents but one,
> carefully curated, protection that alleged victims of sexual assault can avail themselves of.
> *Id*. at *3.

11.      This rings true for survivors of assault, whether children or adults. Forcing

---

[2] "CPLR 214-j accomplishes for adult survivors of sexual assault, i.e. persons who were 18 or over
at the time they were assaulted, what CPLR 214-g did for plaintiffs who were children (under 18)
when they were sexually abused." CPLR 214-j, Cmt. (2022). !

3

Case 1:24-cv-00345-AT Document 1-2 Filed 01/17/24 Page 5 of 26

survivors to reveal their identities in court filings detracts from the purpose and intent of the ASA. Governor Hochul's statement upon signing the law reinforces this stated legislative goal of empowering survivors, recognizing the impact of this type of trauma, and creating an environment that makes survivors feel safe. *See* Governor's Statement on Signing Adult Survivors Act, https://www.governor.ny.gov/news/governor-hochul-signs-adult-survivors-act (May 24, 2022).

12. Indeed, preventing Plaintiff from pursing claims under a pseudonym would only serve the purpose of deterring survivors like Plaintiff, contrary to the legislature's intent.

**B. This Plaintiff Should Be Entitled to Anonymity Given The Nature of the Claims Brought.**

13. Plaintiff's Complaint seeks damages as a result of sexual assault under theories of sexual battery, negligence, and a violation of gender motivated violence law, §10-1104.

14. Plaintiff seeks to shield their identity from the stigma associated with sexual assault. Plaintiff has kept the sexual assault out of the public sphere and fears that disclosure of their identity will cause further emotional distress, embarrassment, and ridicule.

15. Plaintiff will provide and confidentially communicate Plaintiff's name and other identifying information to Defendants in this matter. The relief requested is solely for public anonymity and permission to use a pseudonym in the caption of court filings. Defendants will have the same ability to investigate and defend their case as if Plaintiff's true identity were on the caption of public filings, and, thus, Defendants will face no prejudice in defending their case.

16. For the foregoing reasons, the relief requested by Plaintiff should be granted.

**WHEREFORE**, based upon the foregoing, it is respectfully requested that this Court issue an Order for the following relief:

(i) Deeming Plaintiff's use of the pseudonym "JAA DOE" and with the caption "JAA DOE v. NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS &

4

SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff";

(ii)     Permitting Plaintiff to proceed in this action under the pseudonym "JAA DOE" and with the caption "JAA DOE v. NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff";

(iii)    Directing that the parties, their attorneys, and agents refrain from publishing Plaintiff's true identity;

(iv)    Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JAA DOE" and bear the caption "JAA DOE v. NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff" and directing the County Clerk to enter and record all papers in the action under the title "JAA DOE v. NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff"; and

(v)     Granting such other and further relief as may be just and proper.

Dated:  November 8, 2023
    New York, New York

                              */s/ Jeffrey R. Anderson*
                              Jeffrey R. Anderson
                              Trusha Goffe
                              Nahid A. Shaikh
                              **JEFF ANDERSON & ASSOCIATES, P.A.**
                              363 7th Avenue, 12th Floor
                              New York, NY 10001
                              Telephone: (646) 759-2551
                              Email: *Jeff@AndersonAdvocates.com*
                              Email: *Trusha@AndersonAdvocates.com*
                              Email: *Nahid@AndersonAdvocates.com*

                              *Counsel for Plaintiff*

5

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JAA DOE, | Index No. _____ |
| Plaintiff, | |
| v. | **SUMMONS** |
| NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff, | Date Index No. Purchased: 11/08/2023 |
| Defendants. | Plaintiff designates New York County as the place of trial. |

**TO THE ABOVE NAMED DEFENDANTS:**

    **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint, a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned attorneys listed below within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment by default will be taken against you for the relief demanded herein.

    The basis of venue is that a substantial part of the events giving rise to this action occurred in New York County.

Dated:  November 8, 2023
        New York, New York

Jeffrey R. Anderson
Trusha Goffe
Mike Reck
Nahid A. Shaikh
**JEFF ANDERSON & ASSOCIATES, P.A.**
363 7th Avenue, 12th Floor
New York, NY 10001
Telephone: (646) 759-2551
Email: *jeff@ndersonadvocates.com*
Email: *trusha@andersonadvocates.com*
Email: *mreck@andersonadvocates.com*
Email: *nahid@andersonadvocates.com*

Attorneys for Plaintiff

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JAA DOE, | |
| Plaintiff, | Index No. |
| | _____ |
| v. | |
| | **COMPLAINT** |
| NEIL PORTNOW; NATIONAL ACADEMY | **AND DEMAND FOR JURY TRIAL** |
| OF RECORDING ARTS & SCIENCES, INC.; | |
| and DOES 1-5 whose identities are unknown to | |
| Plaintiff, | |
| | |
| Defendants. | |

Plaintiff JAA Doe brings this action against Defendants Neil Portnow ("Portnow"), and The National Academy of Recording Arts & Sciences, Inc. ("The Recording Academy") and based on information and belief alleges as follows:

## INTRODUCTION

1.      "It has to begin with…women who have the creativity in their hearts and souls, who want to be musicians, who want to be engineers, producers, and want to be part of the industry on the executive level…[They need] to step up because I think they would be welcome." After only one solo female artist received an award during the 2018 Grammys, then-president of The Recording Academy, Portnow, provided the above quote during a live televised broadcast to an estimated 19.8 million viewers in which he stated it is a woman's responsibility to "step up" in order to achieve the opportunities and successes regularly afforded to men within the industry. The quote came just months before Portnow drugged and subsequently sexually assaulted Plaintiff in his New York City hotel room.

1

2.      Plaintiff is standing up and speaking up and taking "responsibility" for herself and others by filing this complaint and exposing Portnow and the problem/crisis in the music industry that protects, permits and profits from a rape culture.

3.      For over fifty years, Portnow has occupied a powerful and influential position in the music industry. Beginning in 1971, Portnow formed the Portnow-Miller Company, Inc where he provided radio promotions, marketing and creative services, music publishing and record production for labels such as RCA Records, The Entertainment Company and Playboy Records. Portnow continued to work as a top-level music production executive with numerous recording companies for over thirty years before being named as president of The Recording Academy.

4.      Portnow boasts a decades-spanning career as a prominent and powerful music executive, serving as president of The Recording Academy from 2002 to 2019 and CEO from 2007 to 2019. Portnow also served as the president of MusiCares, a non-profit organization founded by The Recording Academy in 1989, from 2002 to 2019 when he departed from both organizations.

5.      Regarding Portnow's decision to step down as president and CEO, a representative from The Recording Academy stated at the time, "President/CEO Neil Portnow will begin preparing for a leadership transition after choosing not to seek an extension on his current contract, which expires in July 2019. Portnow shared his plans at The Recording Academy's semi-annual Board of Trustees meeting last week. Throughout the next year, Portnow will work with the Board to chart out an organizational succession and transition plan, while continuing his current work as active President/CEO of The Recording Academy and MusiCares, and Chair of the Board of the GRAMMY Museum." [1]

---

[1]      https://deadline.com/2018/05/recording-academy-president-neil-portnow-resigns-in-2019-1202400983/      (last accessed November 7, 2023)

6.    Upon information and belief, Defendant The Recording Academy knew or should have known of Defendant Portnow's sexually assaultive behavior towards women.

7.    Defendant The Recording Academy aided and abetted Portnow's conduct to protect their reputations and silence Plaintiff's and other women in the music industry who have stood up and spoken up.

8.    As a result of Portnow's sexual assault, enabled by Defendant The Recording Academy, Plaintiff has suffered severe emotional, physical and psychological distress, including shame, guilt, economic loss of earning capacity, and emotional loss.

9.    This action is brought pursuant to the New York Adult Survivors Act, CPLR § 214-j.  The conduct at issue constituted sexual offense(s) against an adult in violation of a section within Article 130 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries. As a civil cause of action was previously time-barred prior to November 24, 2022, the terms of the Adult Survivors Act, CPLR § 214-j, revive the claims set forth below.

10.    This action is further brought pursuant to the New York City Gender Motivated Violence Protection Law, New York City Administrative Code, Chapter 11 §§ 10-1101 – 10-1107. The conduct at issue constituted (a) crime(s) of violence motivated by gender as defined by § 10-1103 and Defendants' enabling thereof and participation therein, and resulted in physical, psychological, and emotional injuries to the Plaintiff. A civil cause of action was previously time-barred prior to March 1, 2023; § 10-1105 revives the claim set forth below.

11.    An Order to Show Cause is filed concurrently herewith if all Defendants have not consented to Plaintiff's use of a pseudonym.

## PARTIES, JURISDICTION, AND VENUE

12.     At all times relevant, Plaintiff was and still is an adult resident of New York. The name utilized by Plaintiff in this complaint is fictitious to protect her privacy as a victim of sexual assault and molestation.

13.     At all times material, Defendant Neil Portnow ("Portnow") was and remains a prominent and influential music industry executive who served as president of The Recording Academy and MusiCares from 2002 to 2019, and CEO of The Recording Academy from 2007 to 2019 and is a resident of California.

14.     At all times material, Defendant The National Academy of Recording Arts and Sciences ("The Recording Academy") was and continues to be an entity authorized to conduct business and conducting business in the State of New York, with its principal places of business at 3030 Olympic Blvd., Santa Monica, CA 90404 and 28 Liberty Street, New York, NY 10005. Most notably, The Recording Academy presents the Grammy Awards.

15.     Defendants Does 1-5 are unknown agents whose identities will be provided when they become known pursuant to CPLR § 1024.

16.     Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

17.     The limitations of Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR § 1601 and/or § 1602 apply.

18.     This Court has jurisdiction pursuant to CPLR § 302 as Defendant Portnow committed a tortious act within the state of New York.

19.     Venue is proper pursuant to CPLR § 503 in that New York County is where a substantial part of the events giving rise to this action occurred.

## FACTUAL ALLEGATIONS

20.     At all times material, Portnow was a prominent and influential figure in the music entertainment industry. Portnow became the president of The Recording Academy in 2002 and was named President/CEO in September 2007. During this tenure, Portnow also served as president and CEO of MusiCares.

21.     Portnow has long portrayed himself as an advocate for musicians and individuals within the music community and has managed strategic advocacy positions at local, state, and national levels. [2]

22.     Portnow used his power, influence, and authority as an executive in the music entertainment industry and President/CEO of The Recording Academy to gain access to, groom, manipulate, drug, and exploit Plaintiff for his own sexual gratification.

23.     Portnow used his position of power, influence, and authority to commit the non-consensual sexual assault of Plaintiff in 2018.

24.     Plaintiff is an internationally acclaimed musician, inventor, and former member of The Recording Academy.

25.     In  2015, Plaintiff was invited to perform at Carnegie Hall in New York City.

26.     After debuting at Carnegie Hall in approximately 2015, Plaintiff was invited to become a voting member of The Recording Academy.

---

[2] https://neilportnow.com/ (last accessed November 7, 2023)

5

27.     In 2016, Plaintiff traveled to New York City to attend an event sponsored by The Recording Academy. While attending the event, Plaintiff's instrument was stolen from her. Plaintiff turned to MusiCares for help. MusiCares covered the cost to replace Plaintiff's instrument.

28.     Inspired by her success at Carnegie Hall and the generosity of MusiCares, Plaintiff obtained a visa and moved to New York City to pursue and further her career as a professional musician.

29.     In January 2018, Plaintiff met Portnow at The Paley Center for Media in New York City, where he was speaking on a panel at an event for the 60th Annual Grammy Awards. [3]

30.     Approximately one week later, Plaintiff received two VIP tickets to the Grammy Awards and afterparty access from Portnow's secretary. Plaintiff was unable to attend due to a previously scheduled commitment.



31.     In February 2018, Plaintiff emailed Portnow to thank him for the tickets, apologize for not being able to attend the Grammy afterparty, and to tell Portnow about her magazine.

32.     In May 2018, Portnow contacted Plaintiff to tell her that he was traveling to New York City.

---

[3] https://www.paleycenter.org/events/2018-grammys/ (last accessed November 7, 2023)

33.     Plaintiff told Portnow that she was interested in interviewing him for her magazine.

34.     In June 2018, Portnow arrived in New York City and invited Plaintiff to meet him at his hotel to conduct the interview.

35.     Plaintiff arrived at the Kitano Hotel and Portnow greeted her in the lobby before hastily escorting her up to his room.

36.     Once inside Portnow's hotel room, Portnow handed Plaintiff a toothbrush/toothpaste travel set, an oversized Grammys t-shirt, and a signed copy of the 60th annual Grammy CD.






37.     Portnow then offered Plaintiff wine. Plaintiff drank the wine, but Portnow did not consume any. Plaintiff asked Portnow why he was not drinking the wine he gave her. Portnow told Plaintiff that he does not drink.

38. Shortly after consuming some of the wine, Plaintiff began to feel woozy and had trouble focusing her eyes. She had never reacted to wine like this before. Plaintiff attempted to read the wine bottle and asked Portnow what proof the wine was. Portnow ignored Plaintiff's question.

39. Plaintiff attempted to check the time on an alarm clock nearby but was unable to read the time on the clock.

40. Plaintiff attempted to stand up to walk to the bathroom, but her legs were shaking, and she was unable to control her body.

41. Plaintiff attempted to leave the hotel room, but Portnow persuaded her that it was too late and there were no taxis available to take her home.

42. Portnow refused to assist Plaintiff with leaving the hotel and attempted to show her something outside the hotel room window while begging her to stay.

43. While Plaintiff was disoriented and incapacitated, Portnow attempted to kiss and massage Plaintiff's body. Portnow spoke to Plaintiff in a comforting voice. Plaintiff pushed Portnow away. Portnow told Plaintiff to "relax" and hushed her.

44. Portnow told Plaintiff in a cajoling and manipulative manner, "I have been thinking about you for a very long time."

45. Plaintiff lost consciousness as Portnow was placing his hands around her waist.

46. On separate occasions throughout the night, Plaintiff regained consciousness momentarily. Each time, Plaintiff was in Portnow's hotel bed. Each time, Portnow was sexually assaulting Plaintiff.

47. One time when Plaintiff regained consciousness, she awoke to Portnow forcing Plaintiff's hand to manipulate his penis, telling her that it was "okay." Portnow then forcibly penetrated Plaintiff's vagina with his penis.

8

48.     Another time when Plaintiff regained consciousness, Portnow was forcibly digitally penetrating Plaintiff's vagina.

49.     Throughout Portnow's sexual assault of Plaintiff, Portnow gave assurances to Plaintiff, telling her it was okay and saying, "you are the boss."

50.     The next morning, Plaintiff woke up woozy and confused in Portnow's hotel bed when the phone rang.

51.     After Portnow finished his phone call, Portnow begged Plaintiff to remain in his hotel room and under his control. Plaintiff refused and resisted Portnow's pleas. After Portnow left the hotel room for a meeting, Plaintiff quickly gathered her belongings and escaped his hotel room.

52.     After Portnow's sexual assault, Plaintiff was confused and conflicted given his prominence and stature in the music industry and the Recording Academy. Plaintiff was aware of his power in the music industry and her position in it as an artist. Plaintiff attempted to contact Portnow several times in the immediate aftermath of the sexual assault to understand and gain clarity as to what had occurred.

53.     Portnow ignored Plaintiff's communications and ultimately returned to Los Angeles on approximately June 15, 2018.

54.     In October 2018, Plaintiff emailed The Recording Academy to notify them of the sexual assault by their executive.

55.     Shortly after Plaintiff emailed The Recording Academy, Plaintiff received an email response from The Recording Academy's Chief People and Culture Officer asking for a phone call to discuss the allegations against Portnow.



56.     In November 2018, Plaintiff received an email from Portnow's legal representative containing a private message from Portnow with no mention of the sexual assault.



57.     In December 2018, Plaintiff filed a police report with the New York City Police Department naming Portnow as the perpetrator who sexually assaulted her.

58.     In August 2019, Portnow officially stepped down as President and CEO of The Recording Academy and MusiCares.

59.     Deborah Dugan ("Dugan") was named as his replacement and took over as President and CEO on August 1, 2019.

60.     On January 16, 2020, only months after appointing Dugan as Portnow's successor, The Recording Academy announced Dugan's administrative leave.

61.     On January 21, 2020, attorneys for Dugan, Portnow's replacement, filed a discrimination complaint against The Recording Academy with the Equal Employment Opportunity Commission in Los Angeles, CA. Contained in the complaint, amongst other

allegations, Dugan's counsel asserted that during a May 2019 meeting of the board, prior to beginning her role as president of the organization, Dugan was informed of sexual assault allegations brought against Portnow. [4]

62. Specifically, Dugan was told a foreign recording artist and academy member had accused Portnow of sexually assaulting her. [5]

63. Per the complaint, Dugan alleged her firing occurred after Dugan refused to bring Portnow back into the organization as a consultant for the Grammys. [6]

64. Portnow released a statement after Dugan filed her complaint stating "…The allegations of rape are ludicrous and untrue… [t]he suggestion that there was [a rape] is disseminating a lie. The baseless complaint about my conduct referenced in the EEOC filing was immediately brought to the attention of the board of directors' executive committee. An in-depth independent investigation by experienced and highly regarded lawyers was conducted and I was completely exonerated. There was no basis for the allegations, and once again I deny them unequivocally." [7]

65. At no time did The Recording Academy or their representatives interview Plaintiff regarding her allegations against Portnow.

66. In June 2021, Dugan and The Recording Academy reached a confidential settlement. [8]

---

[4] Charge of Discrimination in *Deborah Dugan v. National Academy of Recording Arts and Sciences*, (Equal Employment Opportunities Commission, Los Angeles Dist. Office, January 21, 2020), https://www.documentcloud.org/documents/6667812-Dugan-EEOC-Complaint (last accessed November 7, 2023)

[5] *Id*. at paragraph 117.

[6] *Id*. at paragraph 4.

[7] https://www.usatoday.com/story/entertainment/music/2020/01/22/ex-grammys-head-neil-portnow-denies-rape-allegations-ludicrous/4542249002/(last accessed November 7, 2023)

[8] https://www.rollingstone.com/music/music-news/recording-academy-settlement-deborah-dugan-1189295/(last accessed November 7, 2023)

67.    Portnow's comments at the 2018 Grammys, his decision to step down as President and CEO of The Recording Academy and MusiCares, and Dugan's hiring and termination, were widely covered in the media after the settlement was announced.

68.    As a direct result of Defendants' conduct described herein, Plaintiff has suffered and will continue to suffer, great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, humiliation, physical, personal & psychological injuries. Plaintiff was prevented and will continue to be prevented from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counselling, and, on information and belief has and/or will in incur loss of income and/or loss of earning capacity in her musical career. In addition, Plaintiff was unable to maintain her status as a voting member of The Recording Academy.

## COUNT I: SEXUAL BATTERY
### (Against Defendant Neil Portnow)

69.    Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

70.    In June 2018, Defendant Portnow engaged in unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

71.    Plaintiff was 37 years old at the time of the sexual assaults.

72.    Plaintiff did not consent to the harmful bodily contact.

73.    Portnow sexually assaulted Plaintiff in violation of at least one section of New York Penal Law Article 130 or a predecessor statute that prohibited such conduct at the time of the assault.

74.    As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### (Against Defendant The Recording Academy)

75. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

76. At all times material, Portnow was employed by Defendant The Recording Academy and was under Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Portnow engaged in the wrongful conduct while acting in the course and scope of his employment with Defendant and/or accomplished the sexual abuse by virtue of his job-created authority and/or the authority given to him by virtue of his affiliation with Defendant.

77. Defendant negligently hired Portnow and/or negligently placed Portnow in a position to cause foreseeable harm which Plaintiff would not have been subjected to had the Defendant taken reasonable care in its pre-hiring investigation of Portnow.

78. Defendant had a duty, arising from their employment of Portnow, to ensure that he did not sexually assault women.

79. Defendant owed Plaintiff a duty of reasonable care because it promoted its people and programs as being safe and held its agents out as being safe and trustworthy.

80. Defendant The Recording Academy continued to employ Defendant Portnow, enabling his ability to use his authority, power, and fame to exploit, harass, and assault Plaintiff.

81. Further, Defendant owed a duty to train and educate employees and establish adequate and effective policies and procedures to detect, prevent, and address sexual harassment and sexual assault in the entertainment industry.

82. The abuse complained of herein occurred on Defendant's property and/or with the use of their chattels.

83.    Defendant breached their duties to Plaintiff by actively maintaining and employing Portnow in a position of power and authority through which Portnow had access to women, including Plaintiff, and power and control over women, including Plaintiff.

84.    Defendant was negligent in the hiring and supervision of their employees. Defendant failed to educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when boundary violations, sexual harassment, and sexual assault and is suspected or observed.

85.    Defendant was additionally negligent in failing to supervise, monitor, and/or investigate Portnow and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Portnow's sexual assault of Plaintiff.

86.    Defendant was additionally negligent in failing to ensure that their employees and agents did not use the authority and facilities of Defendant to sexually harass and sexually assault women.

87.    Defendant negligently retained Portnow with knowledge of Portnow's propensity for the type of behavior which resulted in Plaintiff's injuries in this action. Defendant failed to investigate Portnow's past and/or current history of sexual assault and, through the exercise of reasonable diligence, should have known of Portnow's propensity for sexual assault. Defendant should have made an appropriate investigation of Portnow and failed to do so. An appropriate investigation would have revealed the unsuitability of Portnow for continued employment and it was unreasonable for Defendant to retain Portnow in light of the information they knew or should have known.

88.    Defendant negligently hired and retained Portnow in a position where he had access to women and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendant taken reasonable care.

15

89.     Prior to the sexual assault of Plaintiff, Defendant learned or should have learned that there was a risk of sexual assault for people participating in their programs and activities. At the very least, Defendant knew or should have known that it did not have sufficient information about whether there was a risk of sexual assault for those participating in its programs and activities.

90.     The Record Academy had a history of sexual harassment in its organization prior to Portnow's sexual assault of Plaintiff.

91.     In failing to properly supervise Portnow, and in failing to establish such training procedures for employees and agents, Defendant failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

92.     In failing to timely remove Portnow or terminate Portnow's employment, Defendant failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

93.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT III: GENDER MOVTIVATED VIOLENCE
### CAUSE OF ACTION PURSUANT TO §10-1104
**(Against all Defendants)**

94.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

95.     Plaintiff is a member of the class of persons that Administrative Code §10-1104 is intended to protect.

96.     Portnow committed a crime of violence motived by gender against Plaintiff.

97.     The crimes perpetrated by Portnow against Plaintiff were based on Plaintiff's gender and due, at least in part, to Portnow's animus towards Plaintiff's gender.

98.    In 2018, Portnow engaged in unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

99.    Portnow committed at least one misdemeanor or felony under New York State Law.

100.   Plaintiff was injured as a result of Defendants' conduct in causing, enabling and participating in the commission of a crime of violence motivated by gender as defined by Chapter 11 § 10-1103 and, therefore, may bring this cause of action against all Defendants.

101.   As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendants in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated:  November 8, 2023
       New York, New York

/s/ Jeffrey R. Anderson

Jeffrey R. Anderson
Trusha Goffe
Mike Reck
Nahid A. Shaikh
**JEFF ANDERSON & ASSOCIATES, P.A.**
363 7th Avenue, 12th Floor
New York, NY 10001
Telephone: (646) 759-2551
Email: *jeff@ndersonadvocates.com*
Email: *trusha@andersonadvocates.com*
Email: *mreck@andersonadvocates.com*
Email: *nahid@andersonadvocates.com*
Attorneys for Plaintiff

17