# EXHIBIT 1

MICHAEL RECK, State Bar No. 209895
*mreck@andersonadvocates.com*
KARIN LANG, State Bar No. 341405
*karin.lang@andersonadvocates.com*
PARKER ESTENSON, State Bar No. 350811
*parker.estenson@andersonadvocates.com*
**JEFF ANDERSON & ASSOCIATES, PA**
12011 San Vicente Boulevard, Suite 700
Los Angeles, California 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

*Attorneys for Plaintiff*

Electronically FILED by Superior Court of California, County of Los Angeles 12/12/2023 11:19 AM David W. Slayton, Executive Officer/Clerk of Court, By M. Elder, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

TERRI MCINTYRE, an individual

Plaintiff,

vs.

NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC. a/k/a and d/b/a THE RECORDING ACADEMY, a corporation; CHARLES MICHAEL GREENE a/k/a C. MICHAEL GREENE a/k/a MIKE GREENE, an individual; and DOES 1-20, inclusive

Defendants.

Case No. 23SMCV05799

**COMPLAINT FOR DAMAGES:**

1. **SEXUAL BATTERY;**
2. **BATTERY;**
3. **ASSAULT;**
4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**
5. **NEGLIGENCE;**
6. **HARASSMENT IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT; AND**
7. **FAILURE TO PREVENT HARASSMENT IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT.**

**Filed Pursuant to Code of Civil Procedure Section 340.16, as amended by Assembly Bill 2777**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

Based upon information and belief available to Plaintiff TERRI MCINTYRE ("Plaintiff") at the time of the filing of this Complaint, Plaintiff alleges as follows against Defendants NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC. a/k/a and d/b/a THE RECORDING ACADEMY, a corporation; CHARLES MICHAEL GREENE a/k/a C. MICHAEL GREENE a/k/a MIKE GREENE, an individual; and DOES 1-20, inclusive ("Defendants"):

## INTRODUCTION

1. As a young single mother in Los Angeles, Plaintiff was thrilled when she was hired for the position of Executive Director of the Los Angeles Chapter of the National Academy of Recording Arts & Sciences ("Academy") in approximately 1994. Plaintiff believed she would be perfect for the position and the position would be perfect for her. Plaintiff could pursue her dreams of working within the Music Industry while giving back to the community through the philanthropic activities promoted by Defendant Academy, and at the same time, provide for herself and her young daughter.

2. However, Plaintiff did not know that for her to survive the Music Industry, maintain her career, and provide for her daughter, she would be forced to endure the pervasive, incessant, and routine sexual harassment and/or sexual assault perpetrated by her supervisor, President and Chief Executive Officer of the Academy, Charles Michael Greene ("Greene").

3. Plaintiff did not know that no action would be taken upon her reporting of Defendant Greene's unwanted advances to her supervisors at Defendant Academy.

4. Plaintiff did not know that she would be stuck in a trap of the pervasive, incessant, and routine sexual harassment and/or sexual assault perpetrated by Defendant Greene.

5. Plaintiff did not know that she would eventually need to resign from Defendant Academy to escape the pervasive, incessant, and routine sexual harassment and/or sexual assault perpetrated by Defendant Greene.

6. Plaintiff did not know that she would eventually need to flee California and move back to her hometown to escape the pervasive, incessant, and routine sexual harassment and/or sexual assault perpetrated by Defendant Greene.

7. Plaintiff did not know that, upon information and belief, Defendant Academy would actively cover-up, conceal, and/or repeatedly excuse Defendant Greene's sexual misconduct.

8. Yet, Plaintiff is informed and believes and thereon alleges that Defendant Academy did know.

9. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew or should have known that Defendant Greene had previously sexually harassed and/or sexually assaulted subordinate employees.

10. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew or should have known that it had offered severance packages and/or payment to subordinate employees who were sexually harassed and/or sexually assaulted by Defendant Greene in exchange for Non-Disclosure Agreements.

11. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew or should have known that they did not maintain a Human Resources department to address the health, safety, and/or well-being of their employees.

12. Plaintiff is informed and believes and thereon alleges that Defendant Academy became beholden to Defendant Greene's power over Defendant Academy, the Music Industry, and the Grammy Awards fearful that Defendant Greene could ruin anyone's career at will.

13. Plaintiff is informed and believes and thereon alleges that because of the power Defendant Greene held over Defendant Academy, subordinate employees, and/or the Music Industry as a whole, Defendant Academy covered up Defendant Greene's sexual harassment and/or sexual assault of subordinate employees.

14. This case is about a survivor who refused to sign a Non-Disclosure Agreement, who refused to have her silence purchased by C. Michael Greene and the Academy.

15. This case is about a survivor's escape from the trap of C. Michael Greene, the Academy, and the Music Industry.

## PARTIES

16. Plaintiff is an adult female currently residing in Florida. At the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, Plaintiff was a resident of Los

Angeles County, California.

17. Plaintiff was an adult throughout the period of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery. Plaintiff brings this Complaint pursuant to California Code of Civil Procedure Section 340.16, as amended by Assembly Bill 2777, for damages suffered as a result of adult sexual assault. In addition, Plaintiff's claim for damages suffered as a result of adult sexual assault is timely filed prior to December 31, 2023.

18. Plaintiff's Complaint is timely filed prior to December 31, 2023 and Plaintiff's claims are revived pursuant to California Code of Civil Procedure § 340.16(e)(1) and § 340.16(e)(2) as Plaintiff alleges that she was sexually assaulted, that Defendant Greene and/or Defendant Academy are legally responsible for damages arising out of the sexual assault, and Defendant Greene and/or Defendant Academy have engaged in a cover-up and/or an attempted cover-up of a previous instance(s) and/or allegation(s) of sexual assault by Defendant Greene and/or an alleged perpetrator as defined by California Code of Civil Procedure § 340.16(e)(2)(C) and § 340.16(e)(4)(A) as amended by Assembly Bill 2777.

19. Plaintiff is informed and believes and thereon alleges that Defendant Greene is, and at all times relevant herein was, a resident of Los Angeles County, California. At the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, Defendant Greene was the President, Chief Executive Officer, and/or Chairman of Defendant Academy.

20. Plaintiff is informed and believes and thereon alleges that at the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, Defendant Greene was also the President, Chief Executive Officer, and/or Founder of MusiCares. Plaintiff is informed and believes and thereon alleges believes that MusiCares is, and at all times relevant herein was, a non-profit organization founded, operated, managed, and/or supervised by Defendant Academy.

21. Plaintiff is informed and believes and thereon alleges that Defendant Academy is a corporation formed and incorporated in the State of Delaware in approximately 1987. Plaintiff is further informed and believes and thereon alleges that Defendant Academy was incorporated in the State of California in approximately 1987 with its principal place of business at 303 Glenoaks Blvd., Burbank, California 91502.

22. Plaintiff is informed and believes and thereon alleges that Defendant Academy is a corporate entity resulting from a series of mergers, consolidations, and/or de-facto mergers of affiliated entities. Plaintiff is informed and believes and thereon alleges that in approximately 1993, Defendant Academy merged with the National Academy of Recording Arts and Sciences (Los Angeles Chapter), resulting in the survival of Defendant Academy as a successor entity.

23. Plaintiff is informed and believes and thereon alleges that as a result of the approximately 1993 merger with the National Academy of Recording Arts and Sciences (Los Angeles Chapter), Defendant Academy assumed all obligations, liabilities, debts, and/or business operations of the National Academy of Recording Arts and Sciences (Los Angeles Chapter).

24. Plaintiff is informed and believes and thereon alleges that as a result of the aforementioned merger, Defendant Academy promptly continued the business operations of the National Academy of Recording Arts and Sciences (Los Angeles Chapter), such that to maintain a façade of continued separate existence would serve to perpetrate a fraud or injustice.

25. Plaintiff is informed and believes and thereon alleges that Defendant Academy has continuously maintained its corporate status and business operations in the State of California, County of Los Angeles, since approximately 1987. Plaintiff is further informed and believes and thereon alleges that Defendant Academy maintains its current principal place of business at 3030 Olympic Blvd., Santa Monica, California, 90404.

26. Plaintiff is informed and believes and thereon alleges that Defendant Academy maintains, and/or at all times relevant herein maintained, a Board of Trustees and Governors ("Board"). Plaintiff is further informed and believes and thereon alleges that at the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, the Board controlled, maintained, operated, managed, supervised, and/or governed Defendant Academy and/or Defendant Greene.

27. Plaintiff is informed and believes and thereon alleges that at the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, Defendant Academy employed, controlled, managed, supervised, maintained, compensated, directed, and/or retained the authority to terminate Defendant Greene in Defendant Greene's position as President, Chief Executive

Officer, and/or Chairman of Defendant Academy, MusiCares, and/or affiliated entities.

28. Plaintiff is informed and believes and thereon alleges that at the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery of Plaintiff, Defendant Academy employed, controlled, managed, supervised, compensated, maintained, and/or directed Plaintiff as an Executive Director of the Los Angeles Chapter of Defendant Academy.

29. Plaintiff is informed and believes and thereon alleges at the times of Defendant Greene's sexual harassment, sexual assault, and/or sexual battery, Defendant Academy authorized, maintained, and/or ratified Defendant Greene as Plaintiff's supervisor and/or superior at Defendant Academy.

30. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants DOES 1-20, inclusive, are unknown to Plaintiff. Accordingly, Plaintiff sues DOES 1-20 by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained. Each of these fictitiously named defendants is an alter ego of one or more of the named Defendants, or is in some manner liable or responsible to Plaintiff under the causes of action set forth in this Complaint.

31. Plaintiff is informed and believes and thereon alleges, at all times material hereto, there existed a unity of interest and ownership among Defendants and each of them, such that an individuality and separateness between Defendants ceased to exist. Defendants were the successors-in-interest and/or alter ego of the other Defendants in that they purchased, controlled, dominated, and/or operated each other without any separate identity, observation of formalities, or any other separateness. To continue to maintain the façade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetuate a fraud and injustice.

32. Plaintiff is informed and believes and thereon alleges, at all times material hereto, Defendants were the agents, representative, servants, employees, partners, and/or joint ventures of each and every other Defendant and were acting within the course and scope of said alternative capacity, identity, agency, representation, and/or employment and were within the scope of their authority, whether actual or apparent. Each of the Defendants is responsible in some manner for one

or more of the events and happenings described herein. Each Defendant approved and/or ratified the conduct of each other Defendant. Consequently, each Defendant is jointly and severally liable to Plaintiff for the damages sustained as a proximate result of his, her, or its conduct. Each of the Defendants proximately caused the injuries and damages alleged.

33. Each of the Defendants aided and abetted each other Defendant. Each Defendant knowingly gave substantial assistance to each other Defendant, as well as Defendants' employees who performed the wrongful conduct alleged herein. Accordingly, each Defendant is jointly and severally liable for the damages proximately caused by the wrongful conduct of each Defendant, and their respective employees.

34. Each of the Defendants is, and at all relevant times herein mentioned was, the co-conspirator of each other and, therefore, each Defendant is jointly and severally liable to Plaintiff for the damages sustained as a proximate result of each other Defendant. Each Defendant entered into an express or implied agreement with each of the other Defendants to commit the wrongs herein alleged.

35. Whenever reference is made to "Defendants" in this Complaint, such allegation shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

## GENERAL FACTUAL ALLEGATIONS

### I. Defendant Academy and Defendant Greene recruit and hire Plaintiff for the Executive Director position.

36. In approximately the fall of 1993, Plaintiff was contacted by Ron Kramer, an executive at Defendant Academy. Mr. Kramer informed Plaintiff that Defendant Academy was hiring for the position of Executive Director of the Defendant Academy's Los Angeles Chapter, and Plaintiff had been recommended as a candidate.

37. Elated to have the opportunity to interview for a prestigious position at the most prestigious organization in the Music Industry, Plaintiff welcomed the opportunity to meet with Mr. Kramer.

38. After meeting with Mr. Kramer in Defendant Academy's headquarters in Santa Monica, California, Plaintiff was informed that she was to complete a phone interview with

Defendant Greene as the next step in the interview process. Plaintiff understood Defendant Greene to be the Chief Executive Officer of Defendant Academy, The Grammy Foundation, and/or MusiCares.

39. After a thorough phone interview with Defendant Greene, Defendant Greene instructed Plaintiff to meet Defendant Greene in person at Defendant Academy's headquarters.

40. During Plaintiff's first in-person meeting with Defendant Greene, Defendant Greene discussed the Executive Director position with Plaintiff, Defendant Greene's goals and dreams for Defendant Academy, and how Defendant Greene thought that Plaintiff was an ideal candidate for the job.

41. After ending the first in-person meeting with a personal tour of Defendant Academy's headquarters, Defendant Greene instructed Plaintiff that the next step in the hiring process was to put Plaintiff's name before the Board for their approval.

42. Defendant Greene also instructed Plaintiff that Defendant Greene would "coach" Plaintiff for the interview with the Board to help ensure her hiring. Plaintiff found it odd that she would need to be coached for an interview, particularly because Defendant Greene's offer was unsolicited.

43. What Plaintiff did not know at the time of Defendant Greene's offer was that Defendant Greene's coaching would include numerous unsolicited calls from Defendant Greene, meeting Defendant Greene at his home, Defendant Greene taking Plaintiff out for dinner, and Defendant Greene requesting that Plaintiff join Defendant Greene in his home following dinner.

44. Indeed, Defendant Greene did call Plaintiff and instruct her to meet Defendant Greene at Defendant Greene's home in or around Glendale, California.

45. Indeed, Defendant Greene brought Plaintiff to dinner under the guise of Defendant Greene conducting a mock interview with Plaintiff, a mock interview where Defendant Greene flirted with Plaintiff.

46. Indeed, Defendant Greene requested that Plaintiff accompany Defendant Greene into his home after dinner. However, Plaintiff declined Defendant Greene's request.

47. After avoiding Defendant Greene's advances, Plaintiff completed her formal and

final interview with the Board at the Universal Hilton Hotel.

48. Shortly thereafter, Plaintiff was informed by Defendant Academy that she had been hired for the position, that she would be the Executive Director of the Los Angeles Chapter of Defendant Academy.

49. Plaintiff was excited and eager to begin what she felt was her dream job at Defendant Academy. As Executive Director, Plaintiff would work closely with leadership of the charitable wing of Defendant Academy, including MusiCares and The Grammy Foundation. Plaintiff was perfect for the position, and the position was perfect for her. Most important, the position allowed Plaintiff to provide for her young daughter.

50. However, what Plaintiff did not know was that Plaintiff's position was also perfect for Defendant Greene. Plaintiff's position allowed Defendant Greene to control Plaintiff, to isolate Plaintiff, to manipulate Plaintiff, to sexually harass Plaintiff, and to sexually assault Plaintiff. Most important, the position allowed for Defendant Greene to provide for his perverse sexual desires unabashedly, without repercussion, and without any protection for Plaintiff.

**II. Plaintiff begins her dream job, but quickly learns that Defendant Greene is targeting her.**

51. Plaintiff's excitement and hope led her into her new office at Defendant Academy's headquarters. Despite her confusion around Defendant Greene's coaching, Plaintiff looked forward to working closely with Mr. Greene. Plaintiff understood that Defendant Greene was one of, if not the, most powerful individuals in the Music Industry. Defendant Greene's vast knowledge, network of contacts, and power would be foundational for Plaintiff's success as Executive Director, crucial for Plaintiff's intent to continue to grow her career in the Music Industry.

52. Yet, Plaintiff's excitement and hope quickly began to dissipate after multiple employees of Defendant Academy told Plaintiff that she was Defendant Greene's type – Plaintiff was blonde, fit, young, and smart.

53. Plaintiff was shocked by these statements, knowing that Defendant Greene was married with children.

54. Plaintiff soon came to learn first-hand that her peers were not exaggerating,

Defendant Greene himself informed Plaintiff that he expected Plaintiff to perform sex acts for Defendant Greene in order to remain employed and progress at Defendant Academy.

55. Indeed, Defendant Greene repeatedly told Plaintiff that she needed to "give some head to get ahead" with Defendant Greene and Defendant Academy.

56. Defendant Greene's demands for sex acts in return for Plaintiff's career were not unfounded, Defendant Greene threatened Plaintiff that Defendant Greene could, and would, blackball Plaintiff's career if she did not succumb to Defendant Greene's sexual desires.

57. Defendant Greene had set his trap around Plaintiff. He commanded his expectation of sex acts to Plaintiff, and warned Plaintiff that her failure to comply with his commands would result in more than just the end of her position at Defendant Academy, but in the Music Industry as a whole.

58. With the trap set, Defendant Greene just needed to continue to tighten it around Plaintiff.

### III. Defendant Greene sexually assaults Plaintiff at Defendant Academy's Annual Trustees' Meeting.

59. During the course of Plaintiff's employment with Defendant Academy, Defendant Academy held an annual meeting of Trustees. In approximately May of 1994, Defendant Academy's meeting of Trustees was held in or around Kona, Hawaii.

60. At the time of Defendant Academy's meeting of Trustees in approximately May of 1994, Plaintiff had only been employed by Defendant Academy and under the supervision of Defendant Greene for approximately 2-3 months.

61. Although Plaintiff had begun to become aware of Defendant Greene's propensities, Plaintiff had yet to appreciate the depth of Defendant Greene's propensity to commit sexual assault upon his subordinate employees.

62. As Executive Director of the Los Angeles Chapter of Defendant Academy, Plaintiff attended Defendant Academy's meeting of Trustees in or around Kona, Hawaii.

63. While at the meeting of Trustees, Plaintiff witnessed and participated in discussions regarding business matters affecting Defendant Academy and/or The Grammys.

64. Plaintiff is informed and believes and thereon alleges that at the meeting of Trustees, the fiduciary Trustees of Defendant Academy discussed Defendant Greene's compensation and bonuses to be awarded to Defendant Greene.

65. Defendant Academy ended the meeting of Trustees by hosting a dinner and concert for employees of Defendant Academy.

66. At the conclusion of the dinner and concert, Defendant Greene requested that Plaintiff meet Defendant Greene in Defendant Greene's hotel room with other employees of Defendant Academy to celebrate by consuming champagne.

67. In Defendant Greene's hotel room, Defendant Greene served champagne from Defendant Greene's refrigerator to Plaintiff and other employees of Defendant Academy.

68. Defendant Greene poured glasses of champagne and individually handed the glasses to each person, including Plaintiff, in Defendant Greene's hotel room.

69. After Plaintiff sipped the champagne provided by Defendant Greene, Plaintiff quickly began to feel unwell and began to lose control of her physical movements. As Plaintiff continued to lose control of her body, she noticed others exiting Defendant Greene's hotel room, leaving Plaintiff isolated with Defendant Greene.

70. Plaintiff's last memory prior to waking up was being alone with Defendant Greene in Defendant Greene's hotel room.

71. The next thing Plaintiff recalls is waking up nude in Defendant Greene's bed.

72. When Plaintiff awoke, Defendant Greene was still asleep, lying nude next to Plaintiff.

73. Plaintiff felt unstable, queasy, and nauseated, but she was determined to exit Defendant Greene's room as quickly as possible.

74. As Plaintiff gathered her clothing, shoes, purse, and room key, Plaintiff noticed what Plaintiff is informed and believes was blue candle wax strewn about Defendant Greene's hotel room.

75. Plaintiff slipped her dress over her head, grabbed her shoes in her hand, and exited Defendant Greene's room as quickly and quietly as she could.

76. With her shoes in her hand, Plaintiff walked to her hotel room, collapsing on her bed as she cried uncontrollably.

77. Plaintiff knew what Defendant had done to her, Plaintiff felt wetness between her legs and smelled of intercourse.

78. Feeling confused, repulsed, violated, soiled, shaken, and ashamed, Plaintiff struggled to stand in the shower as she tried to wash Defendant Greene and his sexual assault off her weakened body.

79. Yet, having to travel back to Los Angeles that morning to reunite with her daughter, Plaintiff had to pull herself together.

80. Upon returning to Los Angeles, in an attempt to cope with Defendant Greene's drugging and sexual assault, Plaintiff began to meet with a mental health professional.

81. Although a mental health professional urged Plaintiff to report Defendant Greene's sexual assault to the police, Plaintiff did not feel mentally strong enough to do so.

82. Plaintiff knew that any report she made would not be pursued. Plaintiff was a young, single mother and Defendant Greene was a wealthy, powerful, and prominent figure in the Music Industry.

83. Moreover, Plaintiff knew by this time that any report she made would effectively end her career. Just as Defendant Greene got Plaintiff her position, he held the power to effectively block her from any further positions in the Music Industry. Out of fear of Defendant Greene, Defendant Academy, and her inability to provide her daughter without this position, Plaintiff could not bring herself to report Defendant Greene at this time.

84. Additionally, following her unexpected and unexplained intoxication after Defendant Greene had personally served her champagne, Plaintiff refused to accept drinks from others or drink something that was not personally opened by her.

85. It is at this time that Defendant Greene's trap around Plaintiff became tighter, his threats and reverence had deterred Plaintiff from reporting his crimes – leaving an already vulnerable Plaintiff at the will of Defendant Greene and Defendant Academy.

**IV. Defendant Greene continues to leverage his position at Defendant Academy to sexually harass and sexually assault Plaintiff.**

86. What Defendant Greene and Defendant Academy had failed to tell Plaintiff during the hiring process was that Defendant Greene would repeatedly and incessantly walk into Plaintiff's office at Defendant Academy without invitation and without purpose.

87. Even when Plaintiff was meeting with other professionals in the Music Industry, Defendant Greene barged into Plaintiff's office and closed the door to Plaintiff's office without Plaintiff's permission.

88. Despite Plaintiff expressing to Defendant Greene that it was disrespectful to walk into her office unannounced, and even more disrespectful to close the door without Plaintiff's permission, Defendant Greene did not change his actions.

89. Instead, Defendant Greene told Plaintiff that Defendant Greene secured Plaintiff's employment at Defendant Academy, that Defendant Greene was Plaintiff's supervisor, that Defendant Greene was in charge of Defendant Academy, and that Defendant Greene would do as he pleased.

90. Defendant Greene consistently sat on the corner of Plaintiff's desk, facing Plaintiff as Defendant Green pressed Defendant Greene's legs and feet against Plaintiff's body.

91. In an attempt to cope with Defendant Greene's repeated violation of Plaintiff's personal space, Plaintiff began to stand up from her chair and walk around her office when Defendant Greene arrived, providing Plaintiff the opportunity to prevent Defendant Greene from trapping her.

92. When Plaintiff did stand, Defendant Greene frequently, repeatedly, and/or consistently moved toward Plaintiff, backing Plaintiff into a wall and preventing Plaintiff from moving any further from Defendant Greene.

93. After backing Plaintiff into a wall, leaving Plaintiff with no escape route, Defendant Greene pressed the front of Defendant Greene's body against the front of Plaintiff's body.

94. Plaintiff also tried to use her desk to create physical distance between herself and Defendant Greene, positioning her desk in an attempt to make it difficult for Defendant Greene to

violate Plaintiff's personal space.

95. However, Defendant Greene scolded Plaintiff for standing up from her chair, demanding that Plaintiff remain seated until Defendant Greene decided that she could stand.

96. Yet, Defendant Greene's demands of Plaintiff and invasion of Plaintiff's personal space were not the biggest problems Plaintiff had to overcome.

97. Rather, when Defendant Greene trapped Plaintiff in Plaintiff's office at Defendant Academy, Defendant Greene consistently, routinely, and/or repeatedly used Defendant Greene's hands to touch Plaintiff's legs, shoulders, neck, and breasts.

98. But Defendant Greene did not stop there. If Plaintiff did stand up, despite Defendant Greene's orders to remain seated, Defendant Greene used Defendant Greene's hands to grasp, grab, and/or manipulate Plaintiff's buttocks.

99. Defendant Greene's propensity to sexually harass and sexually assault Plaintiff by groping her buttocks became so severe and pervasive that Plaintiff began taking actions to evade Defendant Greene, including, but not limited to, not standing next to Defendant Greene when group photographs were taken as Defendant Greene frequently used such opportunities to grope her.

100. After Plaintiff returned home from work one night, she received a call from her female supervisor at Defendant Academy. When Plaintiff answered the phone, she immediately heard the supervisor crying as the supervisor asked Plaintiff if Plaintiff was having an affair with Defendant Greene.

101. After Plaintiff told her supervisor that she was not having an affair with Defendant Greene, Plaintiff's supervisor disclosed to Plaintiff that Plaintiff's supervisor had been in a relationship with Defendant Greene for some time, and that Plaintiff's supervisor had recently aborted Defendant Greene's child after Defendant Greene impregnated her.

102. When Plaintiff arrived at Defendant Academy's headquarters the next day, Defendant Greene was waiting for Plaintiff, telling Plaintiff that they needed to meet in Defendant Greene's office immediately.

103. In Defendant Greene's office, Defendant Greene asked Plaintiff if she had spoken to her supervisor the previous night. After Plaintiff initially declined to share the contents of her

conversation with her supervisor, Defendant Greene demanded that Plaintiff disclose the contents of the conversation or Plaintiff would be terminated.

104. Under the threat of immediate termination, Plaintiff told Defendant Greene the details of her conversation with her supervisor.

105. After disclosing the contents of her conversation, Plaintiff was stuck. Her female supervisor was harsh and difficult with Plaintiff for sharing the details of their intimate conversation. On the other side, Defendant Greene was on alert that Plaintiff now knew about his affair with an employee of Defendant Greene and Defendant Academy.

106. On top of this, Defendant Greene continued to remind Plaintiff about his quid pro quo proposition – that Defendant Greene would personally ensure that Plaintiff continued to climb the corporate ladder of Defendant Academy if Plaintiff would change her stance and engage in a sexual relationship with Defendant Greene.

107. Defendant Greene's trap was quickly tightening around Plaintiff. Plaintiff was Defendant Greene's type. Plaintiff was demanded to perform sex acts for continued employment. Plaintiff was threatened that Defendant Greene, through his position at Defendant Academy, could end Plaintiff's career instantaneously. Defendant Greene had also alienated Plaintiff from one of her supervisors at Defendant Academy, unilaterally removing an escape from his trap. Without this job Plaintiff would be unable to continue her career in the Music Industry, and, more important, would be unable to provide for her young daughter.

108. Although Plaintiff refused to engage in sexual contact or a relationship with Defendant Greene, Defendant Greene had successfully trapped Plaintiff – beautiful, blonde, fit, young, smart, vulnerable, and wholly dependent upon Defendant Greene and Defendant Academy.

109. Defendant Greene's conduct was so severe and pervasive that Plaintiff's assistant commented to Plaintiff that he noticed a change in Plaintiff when Defendant Greene approached Plaintiff's office.

110. In response to Plaintiff's assistant's concerns for Plaintiff, her assistant devised a safety plan and warning system that he relayed to Plaintiff.

111. The plan was that when Plaintiff's assistant saw Defendant Greene approaching

Plaintiff's office, the assistant would ring the bell the assistant kept at his desk, providing Plaintiff advanced notice of Defendant Greene's presence.

**V. Defendant Greene sexually assaults Plaintiff in Defendant Greene's home under the guise of traveling to a meeting.**

112. While Plaintiff was in her office at Defendant Academy's headquarters, Defendant Greene again entered Plaintiff's office without notice or permission.

113. In Plaintiff's office, Defendant Greene commanded Plaintiff to leave with Defendant Greene in 15 minutes to attend a meeting at Pepperdine University in Malibu, California. Plaintiff is informed and believes and thereon alleges that Pepperdine University was being considered as an additional site for an upcoming Grammy in the Schools event. Defendant Greene told Plaintiff that Defendant Greene would drive himself and Plaintiff to Pepperdine University.

114. As Defendant Greene drove north on the Pacific Coast Highway, Defendant Greene turned into a housing development in or around Malibu, California.

115. Once in the development, Defendant Greene drove toward the ocean and pulled into the driveway of a large home that was under construction.

116. Plaintiff asked Defendant Greene why they were stopping at the home, to which Defendant Greene replied that they were early for their meeting and that Defendant Greene wanted to show Plaintiff Defendant Greene's new home.

117. Plaintiff was nervous given Defendant Greene's sexual assault of Plaintiff in Hawaii, and his continued sexual harassment and/or sexual assault at Defendant Academy. However, the presence of construction workers in and around Defendant Greene's home somewhat eased Plaintiff's concerns.

118. After Defendant Greene led Plaintiff through a tour of Defendant Greene's new home, Defendant Greene told Plaintiff that he wanted Plaintiff to see Defendant Greene's private beach.

119. Fearful of protesting against Defendant Greene's requests, Plaintiff reluctantly followed Defendant Greene down to Defendant Greene's beach.

120. At the beach, Defendant Greene sat on a rock and requested Plaintiff sit next to

Defendant Greene. However, fearful of Defendant Greene, Plaintiff declined to sit next to him.

121. At this time, Plaintiff also informed Defendant Greene that Plaintiff was menstruating. Plaintiff had hoped that this would dissuade Defendant Greene from subjecting Plaintiff to further sexual assault and sexual harassment.

122. Defendant Greene then led Plaintiff back into Defendant Greene's home where the construction workers who had been present earlier were now completely absent.

123. In the kitchen of his home, Defendant Greene pulled out two chairs from beneath a table.

124. After Plaintiff sat down in one of the chairs, Defendant Greene remained standing and paced around Plaintiff. As Defendant Greene paced around Plaintiff, Defendant Greene talked about Pepperdine University and the University's potential involvement in the Grammys in the Schools Events.

125. As Defendant Greene paced around Plaintiff, Plaintiff had lost track of Defendant Greene's physical proximity to her.

126. Suddenly, Defendant Greene appeared in front of Plaintiff with Defendant Greene's erect penis exposed to Plaintiff as Defendant Greene stood over her.

127. Before Plaintiff could react, Defendant Greene grabbed the back of Plaintiff's head with Defendant Greene's hands and shoved his erect penis into Plaintiff's mouth.

128. Plaintiff tried to get away from Defendant Greene, but Defendant Greene maintained his firm hold on Plaintiff's head as Plaintiff gagged.

129. Defendant Greene then ejaculated into Plaintiff's mouth.

130. As Defendant Greene ejaculated into Plaintiff's mouth, Defendant Greene moved Defendant Greene's hands from the back of Plaintiff's head to the back of Plaintiff's arms, firmly grabbing Plaintiff's triceps.

131. With his hands firmly on Plaintiff's triceps, Defendant Greene pulled Plaintiff out of the chair.

132. As Defendant Greene pulled Plaintiff out of the chair, Defendant Greene pressed Defendant Greene's mouth against Plaintiff's mouth.

133. As Defendant Greene pressed his mouth against Plaintiff's mouth, Defendant Greene sucked the contents of Defendant Greene's semen out of Plaintiff's mouth.

134. After Defendant Greene sucked the contents of Defendant Greene's semen out of Plaintiff's mouth, Defendant Greene said, "next time, don't swallow so fast. I love the taste of my own cum."

135. Defendant Greene then released his grip on Plaintiff's arms, dropping Plaintiff back into the chair.

136. Plaintiff was shocked and frozen – she did not know if Defendant Greene was going to harm her again, she did not have a ride, and was trapped inside of his home.

137. Defendant Greene then walked back toward Plaintiff, directing Plaintiff to leave the home with Defendant Greene.

138. Instead of driving to Pepperdine University as Defendant Greene had told Plaintiff, Defendant Greene drove back to the headquarters of Defendant Academy.

139. At Defendant Academy's headquarters, Plaintiff exited Defendant Greene's car as quickly as she could to get in her own vehicle and flee.

140. Without a babysitter, Plaintiff had to pick up and care for her daughter after Plaintiff had just been violently sexually assaulted by her supervisor, Defendant Greene.

**VI. Plaintiff tries to escape Defendant Greene's trap, only to learn that Defendant Academy has helped Defendant Greene make the trap unescapable.**

141. Plaintiff's first attempt to escape Defendant Greene's sexual harassment and sexual assault trap was through coping, hoping that she could control the mental and emotional distress that Defendant Greene had subjected her to.

142. Plaintiff began counseling soon after being hired, sexually harassed, and sexually assaulted by Defendant Greene. Approximately twice a week, Plaintiff secured a private mental health professional to help Plaintiff cope with the trauma caused by Defendant Greene.

143. However, counseling did not stop Defendant Greene's routine sexual harassment and/or sexual assault of Plaintiff, forcing Plaintiff to search for more escape routes from Defendant Greene's trap.

144. Plaintiff began dressing in pants when she went to work at Defendant Academy and began wearing non-prescription glasses. Plaintiff hoped that changing her appearance would deter Defendant Greene from tightening his trap.

145. However, Defendant Greene cut off this escape route by continuing to sexually harass and/or sexually abuse Plaintiff.

146. Unable to escape Defendant Greene on her own, Plaintiff decided she needed to be more pro-active, she needed to find new coping mechanisms, new ways to survive inside Defendant Greene's trap of sexual harassment and/or sexual assault. Plaintiff needed help.

147. However, Plaintiff is informed and believes and thereon alleges that Defendant Academy did not have a Human Resources department during Plaintiff's employment.

148. Without Defendant Academy providing Plaintiff a path to report sexual harassment and/or sexual assault committed by her supervisor, Plaintiff was running out of options to escape the ever-tightening trap.

149. Without Human Resources, Plaintiff turned to her supervisors in an attempt to find relief.

150. However, Defendant Greene had already alienated Plaintiff from one of her supervisors, dwindling Plaintiff's ability to seek help.

151. With one supervisor unapproachable, Plaintiff went a level higher in the corporate hierarchy of Defendant Academy, reaching out to Rob Senn who Plaintiff is informed and believes and thereon alleges was the then General Manager of Defendant Academy.

152. Plaintiff guardedly expressed to Mr. Senn that Defendant Greene caused Plaintiff to feel unsafe and stalked. Plaintiff also expressed to Mr. Senn that Plaintiff had been receiving unwanted advances, and Plaintiff was concerned that her work-product would be judged by her compliance with Defendant Greene's demands.

153. After Plaintiff had expressed the aforementioned concerns to Mr. Senn, Defendant Academy installed Kristen Madsen as new direct supervisor of Plaintiff and other employees at Defendant Academy.

154. After Ms. Madsen's installation, Plaintiff told Ms. Madsen that Defendant Greene

caused Plaintiff to feel unsafe and stalked, that Plaintiff had been receiving unwanted advances, and that Plaintiff was concerned that her work-product would be judged by her compliance with Defendant Greene's demands.

155. Yet, Madsen and Senn did not provide Plaintiff relief or an escape route. Instead, Madsen and Senn reminded Plaintiff of Defendant Greene's power at Defendant Academy and in the Music Industry as a whole.

156. Rather than take action, Madsen and Senn told Plaintiff that rumors of Defendant Greene had existed previously, but Defendant Greene was beyond reproach, bulletproof, and that there was nothing that Madsen and Senn could do to help Plaintiff.

157. The advice given by Madsen and Senn to Plaintiff was that she should just find a way to get along with Defendant Greene, she should appease him. If she could not appease Defendant Greene, Plaintiff would not be successful, or employed, at Defendant Academy for very long.

158. Approximately one week after Plaintiff reported Defendant Greene to Senn, Senn approached Plaintiff with a large white envelope.

159. Inside of the envelope provided by Senn was a handwritten letter and a State of California Worker's Compensation Form.

160. Plaintiff is informed and believes and thereon alleges that Senn's letter stated that Worker's Compensation may help Plaintiff cover her medical expenses.

161. Plaintiff is informed and believes and thereon alleges that Senn's use of the term medical expenses referred to Plaintiff's counseling.

162. Furthermore, on the basis of statements made by employees, agents, and/or members of Defendant Academy's accounting department and/or management, Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or Defendant Greene had given several severance packages and/or payments to multiple female employees of Defendant Academy who had left Defendant Academy prior to and/or during Plaintiff's employment at Defendant Academy.

163. Plaintiff is informed and believes and thereon alleges that on the basis of the statements by employees, agents, and/or members of Defendant Academy's accounting department

and/or management, the referenced severance packages to female employees were exchanges for signed Non-Disclosure Agreements and/or confidentiality agreements.

164. Plaintiff is informed and believes and thereon alleges that the aforementioned Non-Disclosure Agreements and severance package and/or payment exchanges arose from sexual harassment, sexual assault, harassment, assault, and/or battery committed by Defendant Greene upon female employees of Defendant Academy who were subordinate to Defendant Greene.

165. Plaintiff is informed and believes and thereon alleges that the aforementioned Non-Disclosure Agreements and severance package and/or payment exchanges arose from the negligence; negligent hiring, supervision, and retention; and/or violations of the California Fair Employment and Housing act committed by Defendant Academy due to Defendant Greene's sexual harassment, sexual assault, harassment, assault, and/or battery of Defendant Greene upon female employees of Defendant Academy who were subordinate to Defendant Greene.

166. Plaintiff was forced to accept Defendant Greene's sexual harassment and/or sexual assault as commonplace at Defendant Academy. Despite reporting Defendant Greene's sexual harassment and/or sexual assault to her direct supervisors, and with the information and belief that Defendant Academy had a pattern and practice of engaging Defendant Greene's victims in Non-Disclosure Agreements, Plaintiff was alone.

167. Plaintiff was stuck in Defendant Greene's trap, reinforced by Defendant Academy, with no escape route.

**VII. Plaintiff's last attempt to escape and her flee for safety.**

168. Plaintiff needed her position to support her daughter. However, having been subject to Defendant Greene's routine sexual harassment and/or sexual assault, and having exhausted attempts to have her supervisors help defend her against Defendant Greene, Plaintiff went to the Board.

169. Plaintiff asked several members of the then Board of Defendant Academy for a position at one of their companies. Plaintiff was not picky; she merely needed to leave Defendant Academy and escape the trap of Defendant Greene.

170. However, none of the Trustees hired Plaintiff, telling Plaintiff that despite their

admiration for her and her work they simply could not hire an employee of Defendant Greene.

171. The Trustees warned Plaintiff that Defendant Greene would retaliate if they hired one of his employees, that Defendant Greene may decide to reject one of the Trustees's artists on the Grammy telecast. They could not take such a risk.

172. Plaintiff had nowhere else turn, and she had no more strength to fight off Defendant Greene.

173. Moreover, Plaintiff is informed and believes and thereon alleges that Defendant Greene became more emboldened following his sexual assault of Plaintiff at his Malibu home because of absence of any repercussion from doing so.

174. Plaintiff's optimism for her career, her life, and ability to care for her daughter was destroyed. Plaintiff was in survival mode.

175. Plaintiff became terrified to go to the office of Defendant Academy, and she instead scheduled meetings away from her office, and Defendant Greene, as much as she could.

176. Plaintiff is informed and believes and thereon alleges that in response to Plaintiff's avoidance of Defendant Greene, Defendant Greene began to incessantly question Plaintiff's assistants as to Plaintiff's whereabouts.

177. Defendant Greene also insisted that Plaintiff carry a pager. Plaintiff is informed and believes and thereon alleges that Defendant Greene's command that she carry a pager was made to enable Defendant Greene to contact Plaintiff at any time at a moment's notice.

178. It is at this point that Plaintiff came to understand that her hopes, dreams, and aspirations to work in the Music Industry were defunct and unreachable. Plaintiff's dream had quickly turned into her nightmare, a nightmare that she could not escape.

179. In approximately April of 1996, Plaintiff submitted a two-week notice of her resignation to Defendant Academy, referencing in her resignation letter that there were serious problems in her work environment at Defendant Academy.

180. Approximately two weeks later, and after receiving a Rolex watch from the Board as a departure gift, Plaintiff resigned from Defendant Academy and left the State of California, fleeing to her hometown.

181. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Greene's sexual harassment.

182. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Greene's sexual assaults.

183. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Greene's continual demands for sexual favors.

184. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Greene's threats that Defendant Greene could and would ruin Plaintiff's career if she did not accede to his sexual demands.

185. Plaintiff's resignation and flight from California came after Plaintiff attended two Grammy Award telecasts only after securing someone to accompany her as to avoid being isolated by Defendant Greene.

186. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Academy's failure to supervise, control, reprimand, and/or terminate Defendant Greene for Defendant Greene's sexual harassments and/or sexual assaults.

187. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Academy's failure to employ Human Resources in their organization to assist Plaintiff in having been sexually harassed and sexually assaulted by Defendant Greene.

188. Plaintiff's resignation and flight from California came after approximately two years of enduring Defendant Academy's failure to take all reasonable steps to prevent Defendant Greene's sexual harassments and sexual assaults of Plaintiff in violation of California Government Code § 12940.

189. Plaintiff's resignation and flight from California came after approximately two years of Defendants' covering up, concealing, and/or falsely denying Defendant Greene's sexual harassment and/or sexual assault against Plaintiff and/or other female employees of Defendant Academy.

190. Finally, Plaintiff's resignation and flight from California came after approximately two years of attempting to survive in Defendant Greene's ever-tightening trap. Approximately two

years of Defendant Academy reinforcing Defendant Greene's trap. Approximately two years of being prey to a predator that Defendant Academy could have stopped.

**VIII. The Aftermath.**

191. After fleeing to her hometown, Plaintiff moved herself and her daughter into Plaintiff's mother's home.

192. Now alienated and ousted from the Music Industry, Plaintiff had to obtain a temporary entry-level job to enter a new industry. Plaintiff was embarrassed and ashamed when she provided her resume to potential employers, frequently needing to answer the question of why she was applying for minimum wage, entry-level jobs when she had been an Executive Director at Defendant Academy.

193. Plaintiff is informed and believes and thereon alleges that in approximately 1997, the Board of Defendant Academy called for an investigation of allegation(s) and/or instance(s) of sexual harassment, sexual assault, and/or financial improprieties at Defendant Academy.

194. Plaintiff is informed and believes and thereon alleges that Defendant Greene stated that the aforementioned investigation of himself concluded that he had not engaged in sexual harassment, sexual assault, and/or financial improprieties at Defendant Academy.

195. In approximately September of 2001, Plaintiff was contacted by Chuck Phillips, a journalist from the *Los Angeles Times*. Mr. Phillips was investigating and preparing stories about Defendant Greene and Defendant Academy. Plaintiff became an anonymous, off the record source for Mr. Phillips as Mr. Phillips chronicled Defendant Academy, Defendant Greene, and Defendant Greene's resignation from Defendant Academy.

196. Plaintiff is informed and believes and thereon alleges that in approximately 2001 Defendant Academy launched an internal investigation into Defendant Greene for his sexual harassment and/or sexual assault of a female employee of Defendant Academy.

197. Plaintiff is informed and believes and thereon alleges that the investigation in approximately 2001 centered around Defendant Greene's sexual harassment and/or sexual assault of an employee at Defendant Academy who was hired to stem the problem of Defendant Greene's sexual harassment and/or sexual assault of female employees at Defendant Academy.

198. Plaintiff is informed and believes that as a result of the investigation in approximately 2001 and the journalistic work of Mr. Phillips, it was revealed that Defendant Academy paid a female employee to settle a complaint the employee filed with the California Department of Fair Employment and Housing in approximately 1993 arising out of Defendant Greene's sexual harassment and/or sexual assault of the employee.

199. After the publication of Mr. Phillips' story in the *Los Angeles Times*, Plaintiff was contacted by an investigator who Plaintiff is informed and believes and thereon alleges was hired by Defendant Academy.

200. Plaintiff is informed and believes and thereon alleges that the investigator was hired by Defendant Academy pursuant to Defendant Academy's aforementioned investigation of Defendant Greene in approximately 2001.

201. A female employee of the investigator hired by Defendant Academy conducted a recorded interview of Plaintiff over the course of 4 days regarding Defendant Greene's sexual harassment and sexual assault.

202. Plaintiff is informed and believes and thereon alleges that in approximately 2002, Defendant Academy agreed to pay approximately $650,000 to the aforementioned employee who was hired to stem the problem of Defendant Greene's sexual harassment and/or sexual assault in an effort to settle the employee's complaint.

203. Plaintiff is informed and believes and thereon alleges that in approximately 2002 Defendant Greene resigned from his positions at Defendant Academy, MusiCares, and/or affiliated entities at a meeting to discuss Defendant Academy's investigation of Defendant Greene's sexual harassment, sexual assault, and/or fiscal improprieties at Defendant Academy.

204. Plaintiff is informed and believes and thereon alleges that Defendant academy paid Defendant Greene millions of dollars at the time of Defendant Greene's resignation.

**IX. Defendant Greene and Defendant Academy's attempts cover-up Defendant Greene's sexual harassment and sexual assault and silence Plaintiff as defined by <u>California Code of Civil Procedure</u> § 340.16, *et seq*.**

205. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or

Defendant Academy have entered, and/or continue to enter, into Non-Disclosure Agreements and/or confidentiality agreements with former and/or current employees of Defendant Academy to cover-up and/or conceal the public disclosure of previous instance(s) and/or allegation(s) of sexual harassment and/or sexual assault committed by Defendant Greene.

206. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or Defendant Academy have entered, and/or continue to enter, into Non-Disclosure Agreements and/or confidentiality agreements with former and/or current employees of Defendant Academy to cover-up and/or conceal disclosure to Plaintiff of previous instance(s) and/or allegation(s) of sexual harassment and/or sexual assault committed by Defendant Greene.

207. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or Defendant Academy have entered into the aforementioned agreements pursuant to a concerted, and/or continuing, effort to cover-up, conceal, and/or hide evidence of Defendant Greene's sexual harassment and sexual assault.

208. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or Defendant Academy have provided, provide, offered, and/or offer severance packages, payments, and/or other items of value to individuals for the purpose of covering up Defendant Greene's pattern and practice of sexual harassment and/or sexual assault in exchange for the execution of the aforementioned agreements.

209. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or Defendant Academy's use of the aforementioned agreements, and accompanying payments, have incentivized, and/or continue to incentivize, individuals, under the penalty of civil liability, to remain silent about Defendant Greene's sexual harassment and sexual assault.

210. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or Defendant Academy have used, and/or continue to use, the threat of termination and/or blackballing from Defendant Academy and/or the Music Industry in a concerted, and/or continuing, effort to cover-up and discourage the public disclosure and/or disclosure to Plaintiff of Defendant Greene's sexual harassment and sexual assault.

211. Plaintiff is informed and believes and thereon alleges that Defendant Greene and/or

Defendant Academy used the aforementioned agreements, acts, and/or threats prior to and/or during the period of time in which Defendant Greene sexually harassed and/or sexually assaulted Plaintiff.

212. Plaintiff is informed and believes and thereon alleges that after Defendant Greene's resignation from Defendant Academy, and Defendant Academy's investigation into Defendant Greene's sexual harassment and/or sexual assault of employees, Garth Fundis, then chairman of the Board of Defendant Academy, made public statements that a "full and fair" investigation of Defendant Greene had taken place and that said investigation revealed no sexual harassment, no sex discrimination, and no hostile work environment at Defendant Academy.

213. Plaintiff is informed and believes and thereon alleges that Mr. Fundis' statements on behalf of Defendant Academy, and/or in advocacy of Defendant Greene, were part of a concerted, and/or continuing, effort to cover-up, conceal, and/or hide evidence of Defendant Academy's knowledge of previous instance(s) and/or allegation(s) of sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment by Defendant Greene.

214. Plaintiff is informed and believes and thereon alleges that Mr. Fundis' statements on behalf of Defendant Academy, and/or in advocacy of Defendant Greene, were part of a concerted, and/or continuing, effort to incentivize individuals to remain silent about Defendant Greene's previous instance(s) and/or allegation(s) of sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment by preemptively undermining the credibility of anyone who sought to make public disclosure of Defendant Greene's sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment.

215. Plaintiff is informed and believes and thereon alleges that Defendant Academy's publication of the existence and/or completion of an internal investigation into Defendant Greene's sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment was part of a concerted, and/or continuing, effort to incentivize individuals to remain silent about Defendant Greene's previous instance(s) and/or allegation(s) of sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment by dissuading others, including civil authorities, from conducting further investigation into Defendant Greene and/or Defendant Academy.

216. Plaintiff is informed and believes and thereon alleges that Defendant Academy's publication and/or characterization of Defendant Academy's investigation of Defendant Greene as being "full and fair," was part of a concerted, and/or continuing, effort to incentivize individuals to remain silent about Defendant Greene's previous instance(s) and/or allegation(s) of sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment by casting doubt upon the ability of victims of Defendant Greene to succeed in bringing actions against Defendant Greene and/or Defendant Academy in a court of law.

217. Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or Defendant Greene have settled complaint(s) and/or allegation(s) of sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment outside of court in a concerted, and/or continuing, effort to cover-up, conceal, and/or prevent the public disclosure of said complaint(s) and/or allegation(s).

218. Plaintiff is informed and believes and thereon alleges that by failing to instill a Human Resources department at Defendant Academy prior to and/or during the time in which Plaintiff was sexually harassed and sexually assaulted, Defendant Academy engaged in a concerted effort to prevent the reporting of Defendant Greene's conduct and thereby prevented others outside the control group of Defendant Academy from having knowledge of Defendant Greene's sexual harassment, sexual assault, sex discrimination, and/or maintenance of a hostile work environment.

219. Plaintiff is informed and believes and thereon alleges that through the aforementioned acts, Defendant Academy has engaged, and/or continues to engage, in a cover-up and/or attempted cover-up of a previous instance, instances, allegation, and/or allegations of sexual assault by Defendant Greene as defined by California Code of Civil Procedure § 340.16(e)(2)(C) and § 340.16(e)(4)(A) as amended by Assembly Bill 2777.

220. Plaintiff is informed and believes and thereon alleges that through the aforementioned acts, Defendant Academy has made, and/or continues to make, a concerted effort to hide evidence relating to sexual assault and/or sexual harassment by Defendant Greene that incentives individuals to remain silent about said evidence as defined by California Code of Civil Procedure § 340.16(e)(2)(C) and § 340.16(e)(4)(A) as amended by Assembly Bill 2777.

221. Plaintiff is informed and believes and thereon alleges that through the aforementioned acts, Defendant Academy has made, and/or continues to make, a concerted effort to prevent information relating to sexual assault and/or sexual harassment by Defendant Greene from becoming public and/or being disclosed to Plaintiff as defined by California Code of Civil Procedure § 340.16(e)(2)(C) and § 340.16(e)(4)(A) as amended by Assembly Bill 2777.

222. Since Plaintiff's resignation from Defendant Academy, both Defendant Academy and Defendant Greene have offered Plaintiff severance package(s) and/or payment(s) in exchange for Plaintiff's execution of a Non-Disclosure Agreement and/or confidentiality agreement regarding Defendant Greene's aforementioned sexual harassment and sexual assault.

223. Despite these offers, Plaintiff has never accepted a severance package and/or payment in exchange for her silence.

224. Despite these offers, Plaintiff has never executed a Non-Disclosure Agreement and/or a confidentiality agreement regarding Defendant Greene's aforementioned sexual harassment and sexual assault.

225. As a survivor of sexual harassment and sexual assault perpetrated by one of the most powerful men in the Music Industry in one of the most powerful institutions in the Music Industry, Plaintiff refuses to allow her silence to be bought and to allow the cover-up to continue.

226. On December 4, 2023, the California Civil Rights Department (formerly the California Department of Fair Employment and Housing) issued Plaintiff a Right to Sue notice for her claims arising under the Fair Employment and Housing Act ("FEHA").

## FIRST CAUSE OF ACTION
## SEXUAL BATTERY -
## CALIFORNIA CIVIL CODE § 1708.5
## (As to Defendant Greene)

227. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

228. During Defendant Greene's time as President, Chief Executive Officer, and/or Chairman of Defendant Academy, Defendant Greene intentionally subjected Plaintiff to repeated

acts of sexual harassment, sexual assault, and/or sexual battery, including, but not limited to: making contact with Plaintiff's legs, feet, shoulders, neck, breasts and buttocks; using Defendant Greene's hands to grab, grasp, and/or otherwise manipulate Plaintiff's buttocks; forcing Defendant Greene's penis into Plaintiff's mouth; Defendant Greene ejaculating into Plaintiff's mouth; Defendant Greene pressing Defendant Greene's mouth against Plaintiff's mouth; Defendant Greene extracting Defendant Greene's semen from Plaintiff's mouth; and/or Defendant Greene's sexual assault of Plaintiff while Plaintiff was under the effects of an unknown intoxicant.

229. Through the aforementioned acts, Defendant Greene caused harmful or offensive contact with an intimate part of Plaintiff's body as defined by California Civil Code § 1708.5.

230. Through the aforementioned acts, Defendant Greene caused harmful or offensive contact between an intimate part of Defendant Greene's body and Plaintiff's body as defined by California Civil Code § 1708.5.

231. Through the aforementioned acts, Defendant Greene caused Plaintiff an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body, and sexually offensive contact with Plaintiff resulted.

232. Through the aforementioned acts, Defendant Greene caused Plaintiff an imminent apprehension of harmful or offensive contact between an intimate part of Defendant Greene's body and Plaintiff's body, and sexually offensive contact resulted.

233. Plaintiff is informed and believes and thereon alleges that through the aforementioned acts, Defendant Greene's actions would have caused a reasonable person an imminent apprehension of harmful or offensive contact with an intimate part of their body and/or between their body and an intimate part of Defendant Greene's body.

234. Plaintiff is informed and believes and thereon alleges that Defendant Greene committed the aforementioned acts with the intent to cause harmful or offensive contact with an intimate part of Plaintiff's body and/or an imminent apprehension of harmful or offensive contact to an intimate part of Plaintiff's body as defined by California Civil Code § 1708.5.

235. Plaintiff is informed and believes and thereon alleges that Defendant Greene committed the aforementioned acts with the intent to cause harmful or offensive contact between an

intimate part of Defendant Greene's body and Plaintiff's body and/or an imminent apprehension of harmful or offensive contact between an intimate part of Defendant Greene's body and Plaintiff's body as defined by California Civil Code § 1708.5.

236. Defendant Greene's aforementioned acts did in fact cause sexually offensive contact with Plaintiff's body.

237. Plaintiff is informed and believes and thereon alleges that Defendant Greene's aforementioned acts would offend a reasonable person and/or a reasonable sense of personal dignity.

238. Defendant Greene's aforementioned acts did offend Plaintiff and did offend Plaintiff's sense of personal dignity.

239. Plaintiff did not consent to the aforementioned acts of Defendant Greene.

240. Given Defendant Greene's position of authority over Plaintiff, Plaintiff was unable to, and did not, give consent to such acts.

241. To the extent that Plaintiff was under the effects of an intoxicant during the aforementioned acts, Plaintiff was unable to, and did not, give consent to Defendant Greene's acts.

242. Plaintiff is informed and believes and thereon alleges that at all times Defendant Greene committed the aforementioned acts, Defendant Greene was an employee, agent, and/or otherwise under the direct supervision, management, direction, and/or control of Defendant Academy.

243. Plaintiff is informed and believes and thereon alleges that all times Defendant Greene committed the aforementioned acts, Plaintiff was employed by Defendant Academy in a position in which Defendant Academy authorized, maintained, instilled, approved, and/or ratified Defendant Greene as Plaintiff's supervisor.

244. Plaintiff is informed and believes and thereon alleges that Defendant Academy approved, authorized, and/or ratified Defendant Greene's sexual battery of Plaintiff by: (1) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene was sexually harassing and/or sexually assaulting Plaintiff; (2) failing to discharge, dismiss, discipline, suspend, terminate,

control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene had and/or was continuing to sexually harass and sexually assault other female subordinates of Defendant Greene and/or female employees of Defendant Academy; (3) placing Defendant Greene in, and allowing him to create, a workplace environment where Defendant Greene could and would supervise and/or control the conduct of Plaintiff and other subordinate employees; (4) actively shielding Defendant Greene from responsibility for his sexual harassments and/or sexual assaults of Plaintiff and/or other female employees of Defendant Academy; (5) failing to acknowledge the existence of complaints against Defendant Greene for his propensity for sexual misconduct; (6) failing to inform, or concealing from, law enforcement officials the fact that Defendants knew or had reason to know Defendant Greene may have sexually harassed and/or sexually battered Plaintiff, thereby enabling Plaintiff to continue to be endangered and sexually harassed and/or sexually battered; (7) failing to take steps to timely remove Defendant Greene from his employ so as to prevent Defendant Greene from using the authority bestowed upon him by Defendant Academy to gain access to Plaintiff and sexually harass and/or sexually batter her; (8) failing to take reasonable steps, and to implement reasonable safeguards and/or policies, to avoid acts of unlawful sexual misconduct by Defendant Greene; (9) offering severance, payment, and/or items of value to female employees who complained about Defendant Green's sexual misconduct in exchange for execution of Non-Disclosure Agreements by said employees; (10) failing to instruct, train, or otherwise inform employees of reporting procedures for sexual harassment and/or sexual battery in the workplace; (11) failing to maintain a Human Resources department to protect the health, safety, and well-being of Defendant Academy's employees; and/or (12) failing to train, educate, inform, and/or teach employees of Defendant Academy how to respond to allegations of sexual misconduct.

245. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

246. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented

from performing daily activities and obtaining the full enjoyment of life.

247. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Greene was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Greene in an amount appropriate to punish and set an example of Defendant Greene.

**SECOND CAUSE OF ACTION**

**BATTERY**

**(As to Defendant Greene)**

248. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

249. During Defendant Greene's time as President, Chief Executive Officer, and/or Chairman of Defendant Academy, Defendant Greene intentionally subjected Plaintiff to repeated acts of sexual harassment, sexual assault, and/or battery, including, but not limited to: making contact with Plaintiff's legs, feet, shoulders, neck, breasts and buttocks; using Defendant Greene's hands to grab, grasp, and/or otherwise manipulate Plaintiff's buttocks; forcing Defendant Greene's penis into Plaintiff's mouth; Defendant Greene ejaculating into Plaintiff's mouth; Defendant Greene pressing Defendant Greene's mouth against Plaintiff's mouth; Defendant Greene extracting Defendant Greene's semen from Plaintiff's mouth; and/or Defendant Greene's sexual assault of Plaintiff while Plaintiff was under the effects of an unknown intoxicant.

250. Through the aforementioned acts, Defendant Greene caused harmful or offensive contact with Plaintiff's person.

251. Plaintiff is informed and believes and thereon alleges that Defendant Greene committed the aforementioned acts with the intent to cause harmful or offensive contact with Plaintiff's person.

252. Plaintiff is informed and believes and thereon alleges that Defendant Greene's

aforementioned acts would offend a reasonable person and/or a reasonable sense of personal dignity.

253. Defendant Greene's aforementioned acts did offend Plaintiff and did offend Plaintiff's sense of personal dignity.

254. Plaintiff did not consent to the aforementioned acts of Defendant Greene.

255. Given Defendant Greene's position of authority over Plaintiff, Plaintiff was unable to, and did not, give consent to such acts.

256. To the extent that Plaintiff was under the effects of an intoxicant during the aforementioned acts, Plaintiff was unable to, and did not, give consent to Defendant Greene's acts.

257. Plaintiff is informed and believes and thereon alleges that at all times Defendant Greene committed the aforementioned acts, Defendant Greene was an employee, agent, and/or otherwise under the direct supervision, management, direction, and/or control of Defendant Academy.

258. Plaintiff is informed and believes and thereon alleges that all times Defendant Greene committed the aforementioned acts, Plaintiff was employed by Defendant Academy in a position in which Defendant Academy authorized, maintained, instilled, approved, and/or ratified Defendant Greene as Plaintiff's supervisor.

259. Plaintiff is informed and believes and thereon alleges that Defendant Academy approved, authorized, and/or ratified Defendant Greene's battery of Plaintiff by: (1) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene was sexually harassing, sexually assaulting, and our battering Plaintiff; (2) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene had and/or was continuing to sexually harass, sexually assault, and/or batter other female subordinates of Defendant Greene and/or female employees of Defendant Academy; (3) placing Defendant Greene in, and allowing him to create, a workplace environment where Defendant Greene could and would supervise and/or control the conduct of Plaintiff and other subordinate employees; (4) actively shielding Defendant Greene from responsibility for his

sexual harassment, sexual assault, and/or battery of Plaintiff and/or other female employees of Defendant Academy; (5) failing to acknowledge the existence of complaints against Defendant Greene for his propensity for sexual misconduct; (6) failing to inform, or concealing from, law enforcement officials the fact that Defendants knew or had reason to know Defendant Greene may have sexually harassed, sexually assaulted, and/or battered Plaintiff, thereby enabling Plaintiff to continue to be endangered, sexually harassed, sexually assaulted, and/or battered; (7) failing to take steps to timely remove Defendant Greene from his employ so as to prevent Defendant Greene from using the authority bestowed upon him by Defendant Academy to gain access to Plaintiff and sexually harass, sexually assault, and/or batter her; (8) failing to take reasonable steps, and to implement reasonable safeguards and/or policies to avoid acts of unlawful sexual misconduct and/or battery by Defendant Greene; (9) offering severance, payment, and/or items of value to female employees who complained about Defendant Greene's sexual misconduct in exchange for execution of Non-Disclosure Agreements by said employees; (10) failing to instruct, train, or otherwise inform employees of reporting procedures for sexual harassment, sexual assault, and/or battery in the workplace; (11) failing to maintain a Human Resources department to protect the health, safety, and well-being of Defendant Academy's employees; and/or (12) failing to train, educate, inform, and/or teach employees of Defendant Academy how to respond to allegations of sexual misconduct and/or battery.

260. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

261. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

262. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Greene was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute

oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive damages against Defendant Greene in an amount appropriate to punish and set an example of Defendant Greene.

**THIRD CAUSE OF ACTION**

**ASSAULT**

**(As to Defendant Greene)**

263. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

264. During Defendant Greene's time as President, Chief Executive Officer, and/or Chairman of Defendant Academy, Defendant Greene intentionally subjected Plaintiff to repeated acts of sexual harassment, sexual assault, and/or assault, including, but not limited to: making contact with Plaintiff's legs, feet, shoulders, neck, breasts and buttocks; using Defendant Greene's hands to grab, grasp, and/or otherwise manipulate Plaintiff's buttocks; forcing Defendant Greene's penis into Plaintiff's mouth; Defendant Greene ejaculating into Plaintiff's mouth; Defendant Greene pressing Defendant Greene's mouth against Plaintiff's mouth; Defendant Greene extracting Defendant Greene's semen from Plaintiff's mouth; and/or Defendant Greene's sexual assault of Plaintiff while Plaintiff was under the effects of an unknown intoxicant.

265. Through the aforementioned acts, Defendant Greene caused Plaintiff to reasonably believe she was to be imminently touched by Defendant Greene in a harmful or offensive manner.

266. Plaintiff's belief that Defendant Greene would imminently contact Plaintiff in a harmful or offensive manner is reasonable because Defendant Greene had repeatedly, consistently, incessantly, and/or continuously subjected Plaintiff to sexual harassment, sexual assault, sexual battery, and/or battery through the aforementioned acts of Defendant Greene. Given Defendant Greene's history of physically sexually harassing, sexually assaulting, committing sexual battery, and/or committing battery upon Plaintiff when Defendant Greene entered Plaintiff's office and invaded upon her personal space, Plaintiff's belief that Defendant Greene would imminently contact Plaintiff in a harmful or offensive manner was reasonable when Defendant Greene entered into Plaintiff's office and invaded upon her personal space.

267. Plaintiff's belief that Defendant Greene would imminently contact Plaintiff in a harmful or offensive manner was also reasonable when Defendant Greene stood over Plaintiff with Defendant Greene's erect penis exposed.

268. Plaintiff is informed and believes and thereon alleges that Defendant Greene committed the aforementioned acts with the intent to cause harmful or offensive contact with Plaintiff's person.

269. Plaintiff is informed and believes and thereon alleges that Defendant Greene's aforementioned acts would offend a reasonable person and/or a reasonable sense of personal dignity.

270. Defendant Greene's aforementioned acts did offend Plaintiff and did offend Plaintiff's sense of personal dignity.

271. Plaintiff did not consent to the aforementioned acts of Defendant Greene.

272. Given Defendant Greene's position of authority over Plaintiff, Plaintiff was unable to, and did not, give consent to such acts.

273. To the extent that Plaintiff was under the effects of an intoxicant during the aforementioned acts, Plaintiff was unable to, and did not, give consent to Defendant Greene's acts.

274. Plaintiff is informed and believes and thereon alleges that at all times Defendant Greene committed the aforementioned acts, Defendant Greene was an employee, agent, and/or otherwise under the direct supervision, management, direction, and/or control of Defendant Academy.

275. Plaintiff is informed and believes and thereon alleges that all times Defendant Greene committed the aforementioned acts, Plaintiff was employed by Defendant Academy in a position in which Defendant Academy authorized, maintained, instilled, approved, and/or ratified Defendant Greene as Plaintiff's supervisor.

276. Plaintiff is informed and believes and thereon alleges that Defendant Academy approved, authorized, and/or ratified Defendant Greene's assault of Plaintiff by: (1) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene was sexually harassing, sexually

assaulting, and our assaulting Plaintiff; (2) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene had and/or was continuing to sexually harass, sexually assault, and/or assault other female subordinates of Defendant Greene and/or female employees of Defendant Academy; (3) placing Defendant Greene in, and allowing him to create, a workplace environment where Defendant Greene could and would supervise and/or control the conduct of Plaintiff and other subordinate employees; (4) actively shielding Defendant Greene from responsibility for his sexual harassment, sexual assault, and/or assault of Plaintiff and/or other female employees of Defendant Academy; (5) failing to acknowledge the existence of complaints against Defendant Greene for his propensity for sexual misconduct; (6) failing to inform, or concealing from, law enforcement officials the fact that Defendants knew or had reason to know Defendant Greene may have sexually harassed, sexually assaulted, and/or assaulted Plaintiff, thereby enabling Plaintiff to continue to be endangered, sexually harassed, sexually assaulted, and/or assaulted; (7) failing to take steps to timely remove Defendant Greene from his employ so as to prevent Defendant Greene from using the authority bestowed upon him by Defendant Academy to gain access to Plaintiff and sexually harass, sexually assault, and/or assault her; (8) failing to take reasonable steps, and to implement reasonable safeguards and/or policies, to avoid acts of unlawful sexual misconduct and/or assault by Defendant Greene; (9) offering severance, payment, and/or items of value to female employees who complained about Defendant Greene's sexual misconduct in exchange for execution of Non-Disclosure Agreements by said employees; (10) failing to instruct, train, or otherwise inform employees of reporting procedures for sexual harassment, sexual assault, and/or assault in the workplace; (11) failing to maintain a Human Resources department to protect the health, safety, and well-being of Defendant Academy's employees; and/or (12) failing to train, educate, inform, and/or teach employees of Defendant Academy how to respond to allegations of sexual misconduct and/or assault.

277. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

278. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

279. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Greene was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Greene in an amount appropriate to punish and set an example of Defendant Greene.

**FOURTH CAUSE OF ACTION**

**NEGLIGENT HIRING, SUPERVISION, AND RETENTION**

**(As to Defendant Academy and DOES 1-20, inclusive)**

280. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

281. Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or its predecessor(s) hired and maintained the employment of Plaintiff.

282. Plaintiff is informed and believes and thereon alleges that because of Defendant Academy's hiring and continued employment of Plaintiff, Defendant Academy entered into a special relationship with Plaintiff.

283. Plaintiff is informed and believes and thereon alleges that because of Defendant Academy's hiring and continued employment of Plaintiff, Defendant Academy was duty bound to protect Plaintiff from foreseeable harms that Defendant Academy knew, or should have known, about.

284. Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or its predecessor(s) hired and maintained the employment of Defendant Greene.

285. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Academy held the authority to supervise, control, manage, direct, alter, and/or terminate

the employment of Defendant Greene from his position at Defendant Academy, MusiCares, and/or other entities controlled by Defendant Academy and/or Defendant Greene.

286. Plaintiff is informed and believes and thereon alleges that because of Defendant's hiring and continued employment of Defendant Greene, Defendant Academy was duty bound to warn and/or protect its employees from foreseeable harm that Defendant Greene posed to others.

287. Plaintiff is informed and believes and thereon alleges that as Defendant Greene's employer, Defendant Academy was duty bound to use reasonable care to ascertain whether Defendant Greene was unfit and/or incompetent to perform his work. Plaintiff is informed and believes and thereon alleges that that this duty continued through Defendant Academy's employ of Defendant Greene.

288. Plaintiff is informed and believes and thereon alleges that through Defendant Academy's employ of Defendant Greene as President, Chief Executive Officer, Chairman, and/or supervisor of subordinate employees, Defendant Academy knew, should have known, and/or became aware of Defendant Greene's unfitness and/or incompetence for his positions(s) including, but not limited to: (1) Defendant Greene's sexual harassment of subordinate employees; (2) Defendant Greene's sexual assault of subordinate employees; (3) Defendant Greene's battery of subordinate employees; (4) Defendant Greene's sexual battery of subordinate employees; (5) Defendant Greene's demands for subordinate employees to comply to Defendant Greene's sexual desires; and/or (6) Defendant Greene's quid pro quo propositions to subordinate employees, conditioning career advancements on accession to Defendant Greene's sexual advances.

289. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, became aware of, and/or reasonably could have foreseen Defendant Greene committing the aforementioned acts upon Plaintiff because of: (1) complaints, reports, and/or disclosures to Defendant Academy and/or its agents by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (2) complaints, reports, and/or disclosures to the California Department of Fair Employment and Housing by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (3) Defendant Academy's exchange of severance packages and/or payment in exchange for Non-

Disclosure Agreements with subordinate employees arising out of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct upon said employees; (4) Plaintiff's reports to her supervisors at Defendant Academy of Defendant Greene causing Plaintiff to feel unsafe, and/or that Defendant Greene was making unwanted advances toward Plaintiff; and/or (5) the acknowledgment of Plaintiff's supervisors at Defendant Academy of Defendant Greene's propensities.

290. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, and/or became aware of the aforementioned actions prior to and/or during the period of time in which Defendant Greene sexually harassed, sexually assaulted, sexually battered, battered, and/or assaulted Plaintiff.

291. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, it was reasonably foreseeable to Defendant Academy that Defendant Greene would harm Plaintiff and/or other subordinate employees.

292. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, Defendant Academy knew, should have known, and/or became aware of the particular risk of harm to Plaintiff and/or other subordinate employees at Defendant Academy.

293. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, Defendant Academy owed Plaintiff and/or other subordinate employees a duty to supervise Defendant Academy to prevent harm to Plaintiff and/or other subordinate employees.

294. Plaintiff is informed and believes and thereon alleges that Defendant Academy breached its duty by failing to supervise Defendant Greene and thereon failed to prevent harm to Plaintiff and/or other subordinate employees.

295. Plaintiff is informed and believes and thereon alleges that had Defendant Academy fulfilled its duty to supervise Defendant Greene that Plaintiff would not have been harmed by Defendant Greene.

296. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, Defendant Academy owed Plaintiff and/or other subordinate employees a duty to terminate Defendant Greene from his supervisory position over Plaintiff and/or other subordinate employees.

297. Plaintiff is informed and believes and thereon alleges that by retaining Defendant Greene in his supervisory position, Defendant Academy breached its duty to Plaintiff and/or other subordinate employees.

298. Plaintiff is informed and believes and thereon alleges that had Defendant terminated Defendant Greene in his supervisory position that Plaintiff would not have been harmed by Defendant Greene.

299. Plaintiff is informed and believes and thereon alleges that it was Defendant Greene's particular unfitness – his propensity to sexually harass, sexually assault, and/or perpetrate sexual misconduct upon subordinate employees – that caused Plaintiff's harm.

300. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

301. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

302. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Academy was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Academy in an amount appropriate to punish and set an example of Defendant Academy.

///

///

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**(As to Defendant Academy and DOES 1-20, inclusive)**

303. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

304. Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or its predecessor(s) hired and maintained the employment of Plaintiff.

305. Plaintiff is informed and believes and thereon alleges that because of Defendant Academy's hiring and continued employment of Plaintiff, Defendant Academy entered into a special relationship with Plaintiff.

306. Plaintiff is informed and believes and thereon alleges that because of Defendant Academy's hiring and continued employment of Plaintiff, Defendant Academy was duty bound to protect Plaintiff from foreseeable harms that Defendant Academy knew, or should have known, about.

307. Plaintiff is informed and believes and thereon alleges that Defendant Academy and/or its predecessor(s) hired and maintained the employment of Defendant Greene.

308. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Academy held the authority to supervise, control, manage, direct, alter, and/or terminate the employment of Defendant Greene from his position at Defendant Academy, MusiCares, and/or other entities controlled by Defendant Academy and/or Defendant Greene.

309. Plaintiff is informed and believes and thereon alleges that because of Defendant's hiring and continued employment of Defendant Greene, Defendant Academy was duty bound to warn and/or protect its employees from foreseeable harm that Defendant Greene posed to others.

310. Plaintiff is informed and believes and thereon alleges that through Defendant Academy's employ of Defendant Greene as President, Chief Executive Officer, Chairman, and/or supervisor of subordinate employees, Defendant Academy knew, should have known, and/or became aware of the harm Defendant Greene posed to Plaintiff and/or other subordinate employees including, but not limited to: (1) Defendant Greene's propensity to sexually harass subordinate

employees; (2) Defendant Greene's propensity to sexually assault subordinate employees; (3) Defendant Greene's propensity to commit battery of subordinate employees; (4) Defendant Greene's propensity to commit sexually batter subordinate employees; (5) Defendant Greene's propensity to demand subordinate employees to comply to Defendant Greene's sexual desires; and/or (6) Defendant Greene's propensity to command quid pro quo propositions upon subordinate employees, conditioning career advancements on accession to Defendant Greene's sexual advances.

311. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, became aware of, and/or reasonably could have foreseen Defendant Greene committing the aforementioned acts upon Plaintiff because of: (1) complaints, reports, and/or disclosures to Defendant Academy and/or its agents by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (2) complaints, reports, and/or disclosures to the California Department of Fair Employment and Housing by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (3) Defendant Academy's exchange of severance packages and/or payment in exchange for Non-Disclosure Agreements with subordinate employees arising out of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct upon said employees; (4) Plaintiff's reports to her supervisors at Defendant Academy of Defendant Greene causing Plaintiff to feel unsafe, and/or that Defendant Greene was making unwanted advances toward Plaintiff; and/or (5) the acknowledgment of Plaintiff's supervisors at Defendant Academy of Defendant Greene's propensities.

312. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, and/or became aware of the aforementioned actions prior to and/or during the period of time in which Defendant Greene sexually harassed, sexually assaulted, sexually battered, battered, and/or assaulted Plaintiff.

313. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, it was reasonably foreseeable to Defendant Academy that Defendant Greene would harm Plaintiff and/or other subordinate employees.

314. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, Defendant Academy knew, should have known, or became aware of the particular risk of harm to Plaintiff and/or other subordinate employees at Defendant Academy.

315. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, Defendant Academy owed Plaintiff and/or other subordinate employees a duty to supervise Defendant Academy to prevent harm to Plaintiff and/or other subordinate employees.

316. Plaintiff is informed and believes and thereon alleges that Defendant Academy breached its duty by failing to supervise, control, and/or terminate Defendant Greene and thereon failed to prevent harm to Plaintiff and/or other subordinate employees. Plaintiff is informed and believes and thereon alleges that Defendant breached its duty to Plaintiff by failing to: (1) warn Plaintiff of Defendant Greene's propensity to harm subordinate employees of Defendant Academy; (2) provide Plaintiff with a reporting structure to disclose workplace incidents of sexual harassment, sexual assault, and/or sexual misconduct; (3) maintain a Human Resources employee and/or Human Resources department to facilitate the health, safety, and/or well-being of employees; (4) train and/or educate other supervisors to handle complaints of workplace sexual harassment, sexual assault, and/or sexual misconduct; (5) acknowledge Plaintiff's complaints, reports, and/or disclosures of Defendant Greene causing Plaintiff to feel unsafe, stalked, and/or Defendant Greene making unwanted advances toward Plaintiff; (6) offer Plaintiff alternate employment environments following Plaintiff's complaints, reports, and/or disclosures; (7) inform law enforcement and/or civil authorities of Defendant Greene's previous sexual harassment, sexual assault, and/or sexual misconduct committed upon subordinate employees; (8) disclose Defendant Greene's history of sexual harassment, sexual assault, and/or sexual misconduct upon subordinate employees; (9) stop Defendant Greene from isolating Plaintiff in Defendant Academy's headquarters; and/or (10) stop Defendant Greene from isolating Plaintiff under the guise of employment related travel.

317. Plaintiff is informed and believes and thereon alleges that had Defendant Academy fulfilled its duty to Plaintiff, she would not have been harmed by Defendant Greene.

318. Plaintiff is informed and believes and thereon alleges that it was Defendant Greene's particular unfitness – his propensity to sexually harass, sexually assault, and/or perpetrate sexual misconduct upon subordinate employees – that caused Plaintiff's harm.

319. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

320. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

321. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Academy was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Academy in an amount appropriate to punish and set an example of Defendant Academy.

## SIXTH CAUSE OF ACTION

## HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT – CALIFORNIA GOVERNMENT CODE § 12940, *et. seq.*

**(As to Defendant Academy and DOES 1-20, inclusive)**

322. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

323. At times mentioned herein, Defendant Academy was bound by the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et. seq*. This statute provides, in pertinent part, that it is unlawful for an employer, or any other person, to harass an employee and/or applicant on the basis of the employee and/or applicant's membership of a protected class.

324. At all times mentioned herein, FEHA explicitly defined sex as a protected class.

325. At all times mentioned herein, Defendant Academy, and/or its predecessor(s), were, and are, an employer as defined by FEHA.

326. At all times mentioned herein, Plaintiff was an employee and/or applicant of Defendant Academy and/or its predecessor(s).

327. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant Academy was the employer of Defendant Greene.

328. Plaintiff is informed and believes and thereon alleges that as Defendant Greene's employer, Defendant Academy: (1) compensated Defendant Greene; (2) held the authority to control Defendant Greene's work; (3) held the authority to control the location of Defendant Greene's work; (4) held the authority to promote and/or terminate Defendant Greene; and/or (5) held the authority to reprimand Defendant Greene.

329. Plaintiff was subjected to unwanted sexual harassment and a hostile work environment, in whole or in part, on the basis of her protected characteristics, her sex and/or gender, in violation of FEHA.

330. Defendants' above-described conduct is harassment as defined by FEHA. Defendants' conduct is harassment as Defendant Greene's conduct was sexual harassment and/or gender harassment.

331. The harassing conduct was severe or pervasive. Pursuant to California Government Code § 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with Plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

332. Defendants' above-described conduct created a work environment that was intimidating, hostile, or offensive to female employees, including Plaintiff, and unreasonably interfered with Plaintiff's work performance.

333. Plaintiff is informed and believes and thereon alleges that a reasonable person in Plaintiff's circumstances would have considered the work environment maintained by Defendants to be hostile or abusive.

334. Plaintiff did, in fact, consider the work environment maintained by Defendants to be hostile or abusive.

335. Defendant Greene's above-described conduct is quid pro quo sexual harassment as Defendant Greene conditioned Plaintiff's employment, and her advancement through her career at Defendant Academy, on Plaintiff's accession to Defendant Greene's unwelcomed sexual advances and/or sexual demands.

336. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, became aware of, and/or reasonably could have foreseen Defendant Greene committing the aforementioned acts upon Plaintiff because of: (1) complaints, reports, and/or disclosures to Defendant Academy and/or its agents by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (2) complaints, reports, and/or disclosures to the California Department of Fair Employment and Housing by subordinate employees of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct; (3) Defendant Academy's exchange of severance packages and/or payment in exchange for Non-Disclosure Agreements with subordinate employees arising out of Defendant Greene's sexual harassment, sexual assault, and/or sexual misconduct upon said employees; (4) Plaintiff's complaints, reports, and/or disclosures of Defendant Greene causing Plaintiff to feel unsafe, stalked, and/or Defendant Greene making unwanted advances toward Plaintiff; and/or (5) the acknowledgment of Plaintiff's supervisors at Defendant Academy of Defendant Greene's propensities.

337. Plaintiff is informed and believes and thereon alleges that Defendant Academy knew, should have known, and/or became aware of the aforementioned actions prior to and/or during the period of time in which Defendant Greene sexually harassed, sexually assaulted, sexually battered, battered, and/or assaulted Plaintiff.

338. Plaintiff is informed and believes and thereon alleges that because Defendant Academy knew, should have known, and/or became aware of the aforementioned actions, it was reasonably foreseeable to Defendant Academy that Defendants were in violation of FEHA through the above-described acts of Defendant Greene

339. At the time of the relevant conduct, Defendant Greene was Plaintiff's supervisor.

340. As Defendant Greene was Plaintiff's supervisor at the time of the relevant conduct, Defendant Academy is strictly liable for Defendant Greene's sexual harassment of Plaintiff.

341. Plaintiff is informed and believes and thereon alleges that Defendant Greene was acting in the course and scope of his employment with Defendant Academy when he committed the aforementioned acts because: (1) Defendant Greene committed said acts on the premises of Defendant Academy; (2) Defendant Greene committed said acts during work hours maintained by Defendant Academy; (3) Defendant Greene committed said acts at events hosted, authorized, ratified, and/or maintained by Defendant Academy; (4) Defendant Greene committed said acts under the guise of supervising Plaintiff's work, performance, and/or employment; (5) Defendant Academy retained the authority to control, supervise, and/or terminate Defendant Greene during the times in which he committed said acts; (6) Defendant Academy continuously compensated Defendant Greene during the time of said acts; and/or (7) Defendant Academy and/or its agents directed Plaintiff to accede to Defendant Greene's acts in order to maintain her employment.

342. Plaintiff is informed and believes and thereon alleges that Defendant Academy approved, authorized, and/or ratified Defendant Greene's harassment of Plaintiff by: (1) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene was sexually harassing, sexually assaulting and/or harassing Plaintiff; (2) failing to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene had and/or was continuing to sexually harass, sexually assault, and/or harass other female subordinates of Defendant Greene and/or female employees of Defendant Academy; (3) placing Defendant Greene in, and allowing him to create, a workplace environment where Defendant Greene could and would supervise and/or control the conduct of Plaintiff and other subordinate employees; (4) actively shielding Defendant Greene from responsibility for his sexual harassment, sexual assault, and/or harassment of Plaintiff and/or other female employees of Defendant Academy; (5) failing to acknowledge the existence of complaints against Defendant Greene of sexual assault and/or harassment on Plaintiff; (6) failing to inform, or concealing from,

law enforcement officials the fact that Defendants knew or had reason to know Defendant Greene may have sexually harassed, sexually assaulted, and/or harassed Plaintiff, thereby enabling Plaintiff to continue to be endangered, sexually harassed, sexually assaulted, and/or harassed; (7) failing to take steps to timely remove Defendant Greene from his employ so as to prevent Defendant Greene from using the authority bestowed upon him by Defendant Academy to gain access to Plaintiff and sexually harass, sexually assault, and/or harass her; (8) failing to take reasonable steps, and to implement reasonable safeguards and/or policies to avoid acts of unlawful sexual misconduct and/or harassment by Defendant Greene; (9) offering severance, payment, and/or items of value to female employees who complained about Defendant Greene's sexual misconduct in exchange for execution of Non-Disclosure Agreements by said employees; (10) failing to instruct, train, or otherwise inform employees of reporting procedures for sexual harassment, sexual assault, and/or harassment in the workplace; (11) failing to maintain a human resources department to protect the health, safety, and well-being of Defendant Academy's employees; and/or (12) failing to train, educate, inform, and/or teach employees of Defendant Academy how to respond to allegations of sexual misconduct and/or harassment.

343. The harassing conduct was a substantial factor in causing Plaintiff's harm.

344. As a direct and proximate result of the conduct of Defendants, Plaintiff has and will continue to suffer harm, including lost earnings, salary, and/or other job benefits, and humiliation, embarrassment, and emotional distress as a result of the harassment.

345. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

346. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

347. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to <u>California Government Code</u> § 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

348. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Academy was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Academy in an amount appropriate to punish and set an example of Defendant Academy.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO TAKE ALL REASONABLE STEPS TO PREVENT HARASSMENT IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT – CALIFORNIA GOVERNMENT CODE § 12940, *et. seq.***

**(As to Defendant Academy and DOES 1-20, inclusive)**

349. Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

350. At times mentioned herein, Defendant Academy was bound by FEHA. This statute provides, in pertinent part, that it is unlawful for an employer to fail to take all reasonable steps to prevent harassment from occurring.

351. FEHA also provides that it is unlawful to harass an employee and/or applicant on the basis of the employee and/or applicant's membership of a protected class.

352. At all times mentioned herein, FEHA explicitly defined sex as a protected class.

353. At all times mentioned herein, Defendant Academy, and/or its predecessor(s), were, and are, an employer as defined by FEHA.

354. At all times mentioned herein, Plaintiff was an employee and/or applicant of Defendant Academy and/or its predecessor(s).

355. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant Academy was the employer of Defendant Greene.

356. Plaintiff is informed and believes and thereon alleges as Defendant Greene's

employer, Defendant Academy: (1) compensated Defendant Greene; (2) held the authority to control Defendant Greene's work; (3) held the authority to control the location of Defendant Greene's work; (4) held the authority to promote and/or terminate Defendant Greene; and/or (5) held the authority to reprimand Defendant Greene.

357. Plaintiff was subjected to unwanted sexual harassment and a hostile work environment, in whole or in part, on the basis of her protected characteristics, her sex and/or gender, in violation of FEHA.

358. Defendants' above-described conduct is harassment as defined by FEHA. Defendants' conduct is harassment as Defendant Greene's conduct was sexual harassment and/or gender harassment.

359. The harassing conduct was severe or pervasive. Pursuant to California Government Code § 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably entered with Plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

360. Defendants' above-described conduct created a work environment that was intimidating, hostile, or offensive to female employees, including Plaintiff, and unreasonably interfered with Plaintiff's work performance.

361. Plaintiff is informed and believes and thereon alleges a reasonable person in Plaintiff's circumstances would have considered the work environment maintained by Defendants to be hostile or abusive.

362. Plaintiff did, in fact, consider the work environment maintained by Defendants to be hostile or abusive.

363. Defendant Greene's above-described conduct is quid pro quo sexual harassment as Defendant Greene conditioned Plaintiff's employment, and her advancement through her career at Defendant Academy, on Plaintiff's accession to Defendant Greene's unwelcomed sexual advances and/or sexual demands.

364. Plaintiff is informed and believes and thereon alleges Defendant Academy failed to take all reasonable steps to prevent Defendant Greene from engaging in harassment of Plaintiff

and/or other subordinate employees in violation of FEHA.

365. Plaintiff is informed and believes and thereon alleges Defendant Academy failed to take all reasonable steps to prevent Defendant Greene from engaging in harassment of Plaintiff and/or other subordinate employees as Defendant Academy: (1) failed to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene was sexually harassing, sexually assaulting and/or harassing Plaintiff; (2) failed to discharge, dismiss, discipline, suspend, terminate, control, and/or supervise Defendant Greene after receiving actual and/or constructive notice that Defendant Greene had and/or was continuing to sexually harass, sexually assault, and/or harass other female subordinates of Defendant Greene and/or female employees of Defendant Academy; (3) placed Defendant Greene in, and allowed him to create, a workplace environment where Defendant Greene could and would supervise and/or control the conduct of Plaintiff and other subordinate employees; (4) actively shielded Defendant Greene from responsibility for his sexual harassment, sexual assault, and/or harassment of Plaintiff and/or other female employees of Defendant Academy; (5) failed to acknowledge the existence of complaints against Defendant Greene of sexual assault and/or harassment of Plaintiff; (6) failed to inform, or concealed from, law enforcement officials the fact that Defendants knew or had reason to know Defendant Greene may have sexually harassed, sexually assaulted, and/or harassed Plaintiff, thereby enabling Plaintiff to continue to be endangered, sexually harassed, sexually assaulted, and/or harassed; (7) failed to take steps to timely remove Defendant Greene from his employ so as to prevent Defendant Greene from using the authority bestowed upon him by Defendant Academy to gain access to Plaintiff and sexually harass, sexually assault, and/or harass her; (8) failed to take reasonable steps, and to implement reasonable safeguards and/or policies, to avoid acts of unlawful sexual misconduct and/or harassment by Defendant Greene; (9) offered severance, payment, and/or items of value to female employees who complained about Defendant Greene's sexual misconduct in exchange for execution of Non-Disclosure Agreements by said employees; (10) failed to instruct, train, or otherwise inform employees of reporting procedures for sexual harassment, sexual assault, and/or harassment in the workplace; (11) failed to maintain a Human Resources department to protect the health, safety, and

well-being of Defendant Academy's employees; and/or (12) failed to train, educate, inform, and/or teach employees of Defendant Academy how to respond to allegations of sexual misconduct and/or harassment.

366. Plaintiff is informed and believes and thereon alleges Defendant Academy knew, should have known, and/or became aware of the aforementioned actions prior to and/or during the period of time in which Defendant Greene sexually harassed, sexually assaulted, sexually battered, battered, and/or assaulted Plaintiff.

367. Defendant Academy's failure to take all reasonable steps to prevent harassment was a substantial factor in causing Plaintiff's harm.

368. As a direct and proximate result of the conduct of Defendants, Plaintiff has and will continue to suffer harm, including lost earnings, salary, and/or other job benefits, and humiliation, embarrassment, and emotional distress as a result of the harassment.

369. As a result of Defendants' conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

370. As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

371. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code § 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

372. Plaintiff is informed and believes and thereon alleges that the conduct of Defendant Academy was oppressive, malicious, manipulative, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiff's rights to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive and/or exemplary damages against Defendant Academy in an amount appropriate to punish and set an example of Defendant Academy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. For past, present, and future general damages in an amount to be determined at trial;

2. For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others in an amount to be determined at trial;

3. For any appropriate punitive or exemplary damages;

4. Any appropriate statutory damages;

5. For cost of suit;

6. For interests as allowed by law;

7. For attorney's fees pursuant to California Government Code § 12965(c)(6) or California Code of Civil Procedure § 1021.5; and

8. For such other and further relief as the Court may deem proper.

DATED: December 6, 2023

**JEFF ANDERSON & ASSOCIATES, PA**

By: Mike Reck

Michael Reck, Esq.
Karin Lang, Esq.
Parker Estenson, Esq.
Attorneys for Plaintiff

**DEMAND FOR TRIAL**

Plaintiff hereby demands a trial by jury in this matter.

DATED: December 6, 2023

**JEFF ANDERSON & ASSOCIATES, PA**

By: Mike Reck

Michael Reck, Esq.
Karin Lang, Esq.
Parker Estenson, Esq.
Attorneys for Plaintiff