# EXHIBIT A

Redline of Amended Complaint

~~SUPREME COURT OF THE STATE OF NEW YORK~~ UNITED STATES DISTRICT COURT
~~COUNTY OF NEW YORK~~ SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAA DOE, <br><br> Plaintiff, <br><br> v. <br><br> NEIL PORTNOW; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; and DOES 1-5 whose identities are unknown to Plaintiff, <br><br> Defendants. | Case No. 1:24-cv-00345-AT <br> ~~Index No.~~ <br> _____ <br><br> **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff JAA Doe brings this action against Defendants Neil Portnow ("Portnow"), and The National Academy of Recording Arts & Sciences, Inc. ("The Recording Academy") and based on information and belief alleges as follows:

## INTRODUCTION

1. "It has to begin with…women who have the creativity in their hearts and souls, who want to be musicians, who want to be engineers, producers, and want to be part of the industry on the executive level…[They need] to step up because I think they would be welcome." After only one solo female artist received an award during the 2018 Grammys, then-president of The Recording Academy, Portnow, provided the above quote during a live televised broadcast to an estimated 19.8 million viewers in which he stated it is a woman's responsibility to "step up" in order to achieve the opportunities and successes regularly afforded to men within the industry. The quote came just months before Portnow drugged and subsequently sexually assaulted Plaintiff in his New York City hotel room.

2. Plaintiff is standing up and speaking up and taking "responsibility" for herself and others by filing this complaint and exposing Portnow and the problem/crisis in the music industry that protects, permits and profits from a rape culture.

3. For over fifty years, Portnow has occupied a powerful and influential position in the music industry. Beginning in 1971, Portnow formed the Portnow-Miller Company, Inc where he provided radio promotions, marketing and creative services, music publishing and record production for labels such as RCA Records, The Entertainment Company and Playboy Records. Portnow continued to work as a top-level music production executive with numerous recording companies for over thirty years before being named as president of The Recording Academy.

4. Portnow boasts a decades-spanning career as a prominent and powerful music executive, serving as president of The Recording Academy from 2002 to 2019 and CEO from 2007 to 2019. Portnow also served as the president of MusiCares, a non-profit organization founded by The Recording Academy in 1989, from 2002 to 2019 when he departed from both organizations.

5. Regarding Portnow's decision to step down as president and CEO, a representative from The Recording Academy stated at the time, "President/CEO Neil Portnow will begin preparing for a leadership transition after choosing not to seek an extension on his current contract, which expires in July 2019. Portnow shared his plans at The Recording Academy's semi-annual Board of Trustees meeting last week. Throughout the next year, Portnow will work with the Board to chart out an organizational succession and transition plan, while continuing his current work as active President/CEO of The Recording Academy and MusiCares, and Chair of the Board of the GRAMMY Museum." [1]

---

[1] https://deadline.com/2018/05/recording-academy-president-neil-portnow-resigns-in-2019-1202400983/ (last accessed November 7, 2023)

6. Upon information and belief, Defendant The Recording Academy knew or should have known of Defendant Portnow's sexually assaultive behavior towards women.

7. Defendant The Recording Academy aided and abetted Portnow's conduct to protect their reputations and silence Plaintiff's and other women in the music industry who have stood up and spoken up.

8. As a result of Portnow's sexual assault, enabled by Defendant The Recording Academy, Plaintiff has suffered severe emotional, physical and psychological distress, including shame, guilt, economic loss of earning capacity, and emotional loss.

9. This action is brought pursuant to the New York Adult Survivors Act, CPLR § 214-j. The conduct at issue constituted sexual offense(s) against an adult in violation of a section within Article 130 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries. As a civil cause of action was previously time-barred prior to November 24, 2022, the terms of the Adult Survivors Act, CPLR § 214-j, revive the claims set forth below.

10. This action is further brought pursuant to the New York City Gender Motivated Violence Protection Law, New York City Administrative Code, Chapter 11 §§ 10-1101 – 10-1107. The conduct at issue constituted (a) crime(s) of violence motivated by gender as defined by § 10-1103 and Defendants' enabling thereof and participation therein, and resulted in physical, psychological, and emotional injuries to the Plaintiff. A civil cause of action was previously time-barred prior to March 1, 2023; § 10-1105 revives the claim set forth below.

11. An Order to Show Cause is filed concurrently herewith if all Defendants have not consented to Plaintiff's use of a pseudonym.

**PARTIES, JURISDICTION, AND VENUE**

12. At all times relevant, Plaintiff was and still is an adult resident of New York. The name utilized by Plaintiff in this complaint is fictitious to protect her privacy as a victim of sexual assault and molestation.

13. At all times material, Defendant Neil Portnow ("Portnow") was and remains a prominent and influential music industry executive who served as president of The Recording Academy and MusiCares from 2002 to 2019, and CEO of The Recording Academy from 2007 to 2019 and is a resident of California.

14. At all times material, Defendant The National Academy of Recording Arts and Sciences ("The Recording Academy") was and continues to be an entity authorized to conduct business and conducting business in the State of New York, with its principal places of business at 3030 Olympic Blvd., Santa Monica, CA 90404 and 28 Liberty Street, New York, NY 10005. Most notably, The Recording Academy presents the Grammy Awards.

15. Defendants Does 1-5 are unknown agents whose identities will be provided when they become known pursuant to CPLR § 1024.

16. Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

17. The limitations of Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR § 1601 and/or § 1602 apply.

18. This Court has jurisdiction pursuant to CPLR § 302 as Defendant Portnow committed a tortious act within the state of New York.

19. Venue is proper pursuant to CPLR § 503 in that New York County is where a substantial part of the events giving rise to this action occurred.

## FACTUAL ALLEGATIONS

20. At all times material, Portnow was a prominent and influential figure in the music entertainment industry. Portnow became the president of The Recording Academy in 2002 and was named President/CEO in September 2007. During this tenure, Portnow also served as president and CEO of MusiCares.

21. Portnow has long portrayed himself as an advocate for musicians and individuals within the music community and has managed strategic advocacy positions at local, state, and national levels. [2]

22. Portnow used his power, influence, and authority as an executive in the music entertainment industry and President/CEO of The Recording Academy to gain access to, groom, manipulate, drug, and exploit Plaintiff for his own sexual gratification.

23. Portnow used his position of power, influence, and authority to commit the non-consensual sexual assault of Plaintiff in 2018.

24. Plaintiff is an internationally acclaimed musician, inventor, and former member of The Recording Academy.

---

[2] https://neilportnow.com/ (last accessed November 7, 2023)

25. In 2015, Plaintiff was invited to perform at Carnegie Hall in New York City.

26. After debuting at Carnegie Hall in approximately 2015, Plaintiff was invited to become a voting member of The Recording Academy.

27. In 2016, Plaintiff traveled to New York City to attend an event sponsored by The Recording Academy. While attending the event, Plaintiff's instrument was stolen from her. Plaintiff turned to MusiCares for help. MusiCares covered the cost to replace Plaintiff's instrument.

28. Inspired by her success at Carnegie Hall and the generosity of MusiCares, Plaintiff obtained a visa and moved to New York City to pursue and further her career as a professional musician.

29. In January 2018, Plaintiff met Portnow at The Paley Center for Media in New York City, where he was speaking on a panel at an event for the 60th Annual Grammy Awards.[3]

30. Approximately one week later, Plaintiff received two VIP tickets to the Grammy Awards and afterparty access from Portnow's secretary. Plaintiff was unable to attend due a previously scheduled commitment.



---

[3] https://www.paleycenter.org/events/2018-grammys/ (last accessed November 7, 2023)

31. In February 2018, Plaintiff emailed Portnow to thank him for the tickets, apologize for not being able to attend the Grammy afterparty, and to tell Portnow about her magazine.

32. In May 2018, Portnow contacted Plaintiff to tell her that he was traveling to New York City.

33. Plaintiff told Portnow that she was interested in interviewing him for her magazine.

34. In June 2018, Portnow arrived in New York City and invited Plaintiff to meet him at his hotel to conduct the interview.

35. Plaintiff arrived at the Kitano Hotel and Portnow greeted her in the lobby before hastily escorting her up to his room.

36. Once inside Portnow's hotel room, Portnow handed Plaintiff a toothbrush/toothpaste travel set, an oversized Grammys t-shirt, and a signed copy of the 60th annual Grammy CD.





37. Portnow then offered Plaintiff wine. Plaintiff drank the wine, but Portnow did not consume any. Plaintiff asked Portnow why he was not drinking the wine he gave her. Portnow told Plaintiff that he does not drink.

38. Shortly after consuming some of the wine, Plaintiff began to feel woozy and had trouble focusing her eyes. She had never reacted to wine like this before. Plaintiff attempted to read the wine bottle and asked Portnow what proof the wine was. Portnow ignored Plaintiff's question.

39. Plaintiff attempted to check the time on an alarm clock nearby but was unable to read the time on the clock.

40. Plaintiff attempted to stand up to walk to the bathroom, but her legs were shaking, and she was unable to control her body.

41. Plaintiff attempted to leave the hotel room, but Portnow persuaded her that it was too late and there were no taxis available to take her home.

42. Portnow refused to assist Plaintiff with leaving the hotel and attempted to show her something outside the hotel room window while begging her to stay.

43. While Plaintiff was disoriented and incapacitated, Portnow attempted to kiss and massage Plaintiff's body. Portnow spoke to Plaintiff in a comforting voice. Plaintiff pushed Portnow away. Portnow told Plaintiff to "relax" and hushed her.

44. Portnow told Plaintiff in a cajoling and manipulative manner, "I have been thinking about you for a very long time."

45. Plaintiff lost consciousness as Portnow was placing his hands around her waist.

46. On separate occasions throughout the night, Plaintiff regained consciousness momentarily. Each time, Plaintiff was in Portnow's hotel bed. Each time, Portnow was sexually assaulting Plaintiff.

47. One time when Plaintiff regained consciousness, she awoke to Portnow forcing Plaintiff's hand to manipulate his penis, telling her that it was "okay." Portnow then forcibly penetrated Plaintiff's vagina with his penis.

48. Another time when Plaintiff regained consciousness, Portnow was forcibly digitally penetrating Plaintiff's vagina.

49. Throughout Portnow's sexual assault of Plaintiff, Portnow gave assurances to Plaintiff, telling her it was okay and saying, "you are the boss."

50. The next morning, Plaintiff woke up woozy and confused in Portnow's hotel bed when the phone rang.

51. After Portnow finished his phone call, Portnow begged Plaintiff to remain in his hotel room and under his control. Plaintiff refused and resisted Portnow's pleas. After Portnow left the hotel room for a meeting, Plaintiff quickly gathered her belongings and escaped his hotel room.

52. Prior to the sexual assault of Plaintiff, The Recording Academy knew or should have known of Portnow's propensity to commit sexual assault.

53. In approximately 1977, Portnow sexually assaulted another woman in a substantially similar manner to his assault of Plaintiff.

54. Upon information and belief, at the time of this assault, Portnow was a producer at RCA records.

55. Portnow invited the young musician to his home under the pretense of talking about her career.

9

56. At the home, Portnow offered the woman wine and encouraged her to drink it.

57. Portnow then sexually assaulted the woman in his home.

51.

52.58. After Portnow's sexual assault, Plaintiff was confused and conflicted given his prominence and stature in the music industry and the Recording Academy. Plaintiff was aware of his power in the music industry and her position in it as an artist. Plaintiff attempted to contact Portnow several times in the immediate aftermath of the sexual assault to understand and gain clarity as to what had occurred.

53.59. Portnow ignored Plaintiff's communications and ultimately returned to Los Angeles on approximately June 15, 2018.

54.60. In October 2018, Plaintiff emailed The Recording Academy to notify them of the sexual assault by their executive.

61. Shortly after Plaintiff emailed The Recording Academy, Plaintiff received an email response from The Recording Academy's Chief People and Culture Officer asking for a phone call to discuss the allegations against Portnow.

55. 

56. In November 2018, Plaintiff received an email from Portnow's legal representative containing a private message from Portnow with no mention of the sexual assault.



62.

57.63. In December 2018, Plaintiff filed a police report with the New York City Police Department naming Portnow as the perpetrator who sexually assaulted her.

58.64. In August 2019, Portnow officially stepped down as President and CEO of The Recording Academy and MusiCares.

59.65. Deborah Dugan ("Dugan") was named as his replacement and took over as President and CEO on August 1, 2019.

60.66. On January 16, 2020, only months after appointing Dugan as Portnow's successor, The Recording Academy announced Dugan's administrative leave.

61.67. On January 21, 2020, attorneys for Dugan, Portnow's replacement, filed a discrimination complaint against The Recording Academy with the Equal Employment

Opportunity Commission in Los Angeles, CA. Contained in the complaint, amongst other allegations, Dugan's counsel asserted that during a May 2019 meeting of the board, prior to beginning her role as president of the organization, Dugan was informed of sexual assault allegations brought against Portnow. [4]

~~62~~68.     Specifically, Dugan was told a foreign recording artist and academy member had accused Portnow of sexually assaulting her. [5]

~~63~~69.     Per the complaint, Dugan alleged her firing occurred after Dugan refused to bring Portnow back into the organization as a consultant for the Grammys. [6]

~~64~~70.     Portnow released a statement after Dugan filed her complaint stating "…The allegations of rape are ludicrous and untrue… [t]he suggestion that there was [a rape] is disseminating a lie. The baseless complaint about my conduct referenced in the EEOC filing was immediately brought to the attention of the board of directors' executive committee. An in-depth independent investigation by experienced and highly regarded lawyers was conducted and I was completely exonerated. There was no basis for the allegations, and once again I deny them unequivocally." [7]

---

[4]    Charge of Discrimination in *Deborah Dugan v. National Academy of Recording Arts and Sciences*, (Equal Employment Opportunities Commission, Los Angeles Dist. Office, January 21, 2020), https://www.documentcloud.org/documents/6667812-Dugan-EEOC-Complaint (last accessed November 7, 2023)

[5]    *Id*. at paragraph 117.

[6]    *Id*. at paragraph 4.

[7]    https://www.usatoday.com/story/entertainment/music/2020/01/22/ex-grammys-head-neil-portnow-denies-rape-allegations-ludicrous/4542249002/(last accessed November 7, 2023)

~~65~~71.    At no time did The Recording Academy or their representatives interview Plaintiff regarding her allegations against Portnow.

~~66~~72.    In June 2021, Dugan and The Recording Academy reached a confidential settlement. [8]

~~67~~73.    Portnow's comments at the 2018 Grammys, his decision to step down as President and CEO of The Recording Academy and MusiCares, and Dugan's hiring and termination, were widely covered in the media after the settlement was announced.

~~68~~74.    As a direct result of Defendants' conduct described herein, Plaintiff has suffered and will continue to suffer, great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, humiliation, physical, personal & psychological injuries. Plaintiff was prevented and will continue to be prevented from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counselling, and, on information and belief has and/or will in incur loss of income and/or loss of earning capacity in her musical career. In addition, Plaintiff was unable to maintain her status as a voting member of The Recording Academy.

**COUNT I: SEXUAL BATTERY**
**(Against Defendant Neil Portnow)**

~~69~~75.    Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

---

[8]    https://www.rollingstone.com/music/music-news/recording-academy-settlement-deborah-dugan-1189295/(last accessed November 7, 2023)

70 76.   In June 2018, Defendant Portnow engaged in unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

71 77.   Plaintiff was 37 years old at the time of the sexual assaults.

72 78.   Plaintiff did not consent to the harmful bodily contact.

73 79.   Portnow sexually assaulted Plaintiff in violation of at least one section of New York Penal Law Article 130 or a predecessor statute that prohibited such conduct at the time of the assault.

74 80.   As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

**COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
**(Against Defendant The Recording Academy)**

75 81.   Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

76 82.   At all times material, Portnow was employed by Defendant The Recording Academy and was under Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Portnow engaged in the wrongful conduct while acting in the course and scope of his employment with Defendant and/or accomplished the sexual abuse by virtue of his job-created authority and/or the authority given to him by virtue of his affiliation with Defendant.

77 83.   Defendant negligently hired Portnow and/or negligently placed Portnow in a position to cause foreseeable harm which Plaintiff would not have been subjected to had the Defendant taken reasonable care in its pre-hiring investigation of Portnow.

78 84.   Defendant had a duty, arising from their employment of Portnow, to ensure that he did not sexually assault women.

15

85. Defendant owed Plaintiff a duty of reasonable care because it promoted its people and programs as being safe and held its agents out as being safe and trustworthy.

Defendant The Recording Academy continued to employ Defendant Portnow, enabling his ability to use his authority, power, and fame to exploit, harass, and assault Plaintiff.

86.

87. Further, Defendant owed a duty to train and educate employees and establish adequate and effective policies and procedures to detect, prevent, and address sexual harassment and sexual assault in the entertainment industry.

88. The abuse complained of herein occurred on Defendant's property and/or with the use of their chattels.

89. Defendant breached their duties to Plaintiff by actively maintaining and employing Portnow in a position of power and authority through which Portnow had access to women, including Plaintiff, and power and control over women, including Plaintiff.

90. Defendant was negligent in the hiring and supervision of their employees. Defendant failed to educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when boundary violations, sexual harassment, and sexual assault and is suspected or observed.

91. Defendant was additionally negligent in failing to supervise, monitor, and/or investigate Portnow and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Portnow's sexual assault of Plaintiff.

92. Defendant was additionally negligent in failing to ensure that their employees and agents did not use the authority and facilities of Defendant to sexually harass and sexually assault women.

87.93.    Defendant negligently retained Portnow with knowledge of Portnow's propensity for the type of behavior which resulted in Plaintiff's injuries in this action. Defendant failed to investigate Portnow's past and/or current history of sexual assault and, through the exercise of reasonable diligence, should have known of Portnow's propensity for sexual assault. Defendant should have made an appropriate investigation of Portnow and failed to do so. An appropriate investigation would have revealed the unsuitability of Portnow for continued employment and it was unreasonable for Defendant to retain Portnow in light of the information they knew or should have known.

88.94.    Defendant negligently hired and retained Portnow in a position where he had access to women and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendant taken reasonable care.

89.95.    Prior to the sexual assault of Plaintiff, Defendant learned or should have learned that there was a risk of sexual assault for people participating in their programs and activities. At the very least, Defendant knew or should have known that it did not have sufficient information about whether there was a risk of sexual assault for those participating in its programs and activities.

90.96.    The Record Academy had a history of sexual harassment in its organization prior to Portnow's sexual assault of Plaintiff.

91.97.    In failing to properly supervise Portnow, and in failing to establish such training procedures for employees and agents, Defendant failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

17

98. In failing to timely remove Portnow or terminate Portnow's employment, Defendant failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

99. As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT III: GENDER MOVTIVATED VIOLENCE
### CAUSE OF ACTION PURSUANT TO §10-1104
**(Against all Defendants)**

100. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

101. Plaintiff is a member of the class of persons that Administrative Code §10-1104 is intended to protect.

102. Portnow committed a crime of violence motived by gender against Plaintiff.

103. The crimes perpetrated by Portnow against Plaintiff were based on Plaintiff's gender and due, at least in part, to Portnow's animus towards Plaintiff's gender.

104. In 2018, Portnow engaged in unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

105. Portnow committed at least one misdemeanor or felony under New York State Law.

106. Plaintiff was injured as a result of Defendants' conduct in causing, enabling and participating in the commission of a crime of violence motivated by gender as defined by Chapter 11 § 10-1103 and, therefore, may bring this cause of action against all Defendants.

107. As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendants in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 25, 2024
      New York, New York

                                    /s/
                                 Jeffrey R. Anderson
                                 Trusha Goffe
                                 Mike Reck
                                 Nahid A. Shaikh
                                 **JEFF ANDERSON & ASSOCIATES, P.A.**
                                 363 7th Avenue, 12th Floor
                                 New York, NY 10001
                                 Telephone: (646) 759-2551
                                 Email: *jeff@ndersonadvocates.com*
                                 Email: *trusha@andersonadvocates.com*
                                 Email: *mreck@andersonadvocates.com*
                                 Email: *nahid@andersonadvocates.com*
                                 Attorneys for Plaintiff

**Formatted:** Indent: Left: 2.44", First line: 0.5"