# Morvillo Abramowitz Grand Iason & Anello P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
———
WRITER'S CONTACT INFORMATION

espiro@maglaw.com
(212) 880-9460

SENIOR COUNSEL
PAUL R. GRAND
———
COUNSEL
JASMINE JUTEAU
———
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

May 14, 2024

**VIA ECF & EMAIL**
Honorable Analisa Torres
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2210
New York, New York 10007-1312

    Re:    *Doe v. Portnow, et al.*, 24 Civ. 345 (AT)

Dear Judge Torres:

    We are attorneys for Defendant Neil Portnow in the above-referenced action and write to object to Plaintiff's pending request to voluntarily dismiss her claims *without* prejudice. (Dkt. #37). Any dismissal of this lawsuit should be *with* prejudice.

    Now faced with the likelihood that the Court will require her to reveal her real name and claim ownership over a trove of communications flatly contradicting her claims, Plaintiff seeks to preserve her anonymity by dismissing her complaint while leaving open the possibility of trying to bring suit again. The Court should not countenance such gamesmanship, especially where Plaintiff has sought to destroy Mr. Portnow's reputation not just by filing this action, but also by having one of her attorneys go on a media expedition, extensively publicizing her false claims. Indeed, this is not the first, second, or third time Plaintiff has threatened suit, but rather the *fifth* time with the *fifth* set of attorneys in the last almost five years. Each time Mr. Portnow's counsel has advised the attorney *du jour* of the text messages and email communications flatly disproving Plaintiff's claims, and each time the attorney has withdrawn. Only this time (when Plaintiff's attorneys failed to contact Mr. Portnow's counsel before filing) did Plaintiff make it so far as the courthouse steps. Now, following receipt of a detailed Rule 11 letter highlighting some of the damning messages and facing the prospect of having to litigate this lawsuit publicly, Plaintiff's most recent counsel has sought to withdraw. In these circumstances, Mr. Portnow is entitled to a dismissal with prejudice to avoid another five years defending against Plaintiff's baseless claims.

I. **Legal Standard**

Because Mr. Portnow has filed an Answer in this action, Plaintiff may not voluntarily dismiss her action as of right.[1] *See* Fed. R. Civ. P. 41(a)(2). Instead, that decision is left to the Court's "sound discretion." *See Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001). There are two lines of authority governing such an inquiry. The first looks to whether the defendant would suffer "some plain legal prejudice other than the mere prospect of a second lawsuit." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006) (internal quotation marks omitted).[2] The second looks to the substantial prejudice standard set forth in *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). There are several non-exhaustive factors that courts consider under *Zagano*: (1) "the plaintiff's diligence in bringing the motion," (2) "any 'undue vexatiousness' on plaintiff's part," (3) "the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial," (4) "the duplicative expense of relitigation," and (5) "the adequacy of plaintiff's explanation for the need to dismiss." *Zagano*, 900 F.2d 12, 14 (2d Cir. 1990). None of these factors, "singly or in combination with another, is dispositive." *Ogden Power Development-Cayman, Inc. v. PMR Ltd. Co.*, No. 14 Civ. 8169 (PKC), 2015 WL 2414581, at *2 (S.D.N.Y. May 21, 2015) (internal quotation marks omitted).

"Some, if not most, of these factors are influenced by the probable merit of the claims that a plaintiff is seeking to withdraw," because "[w]here a defendant has cast substantial doubt on the validity of a plaintiff's claims or where such claims are dubious on their face, the prospect of relitigation offers little value but threatens much cost." *Rep. of Colombia v. Diageo N. Am., Inc.*, No. 04 Civ. 4372 (NGG), 2011 WL 4828814, at *2 (E.D.N.Y. Sept. 30, 2011). Courts may also consider whether a plaintiff is moving to dismiss to "avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice," *Galasso v. Eisman, Zucker, Klein, & Ruttenberg*, 310 F. Supp. 2d 569, 572, 574 (S.D.N.Y. 2004) (collecting cases). In this case, the utter lack of merit of Plaintiff's claims dictates that the action be dismissed with prejudice.

II. **The Prospect of Relitigation Offers No Value Because Plaintiff's Claims are Meritless**

For nearly five years, Plaintiff threatened suit against Mr. Portnow based on his having allegedly drugged and assaulted her at the Kitano Hotel in Manhattan. Each time Plaintiff was stopped in her tracks when her attorneys learned of text and email communications laying out in

---

[1] On May 13, 2024, Plaintiff filed a Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (*See* Dkt. #48). This notice is ineffective as to Mr. Portnow because he previously filed an answer to the Complaint in this action. (*See* Dkt. #32).

[2] Plain legal prejudice has been defined to include "loss of a federal forum, the loss of jury trial rights, the loss of a statute-of-limitations defense, or the inability to conduct sufficient discovery to mount an adequate defense." *Gaffos, Inc. v. Designer Optics Corp.*, No. 20 Civ. 5783 (RER), 2022 WL 2467539, at *4 (E.D.N.Y. March 23, 2022). Mr. Portnow does not rely on this line of authority at this time.

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**

Hon. Analisa Torres
May 14, 2024
Page 3

detail Plaintiff's initial approach to Mr. Portnow, the consensual nature of Plaintiff's single sexual interaction with Mr. Portnow, her marriage proposal to him, her request for assistance with her immigration application, and her eventual erratic and concerning behavior when Mr. Portnow did not share her feelings.

For example, just days after the alleged assault, Plaintiff told Mr. Portnow: "i sincerely hope all you are doing is not playing game with me.  i express my feeling about you 100% and i have done all for you." (June 24, 2018, 9:56:07 AM Message). "i will try to accept whatever as you want." (June 24, 2018, 10:03:27 AM Message). "already my heaet [sic] broken. I gave up almost what I expected and dreamed between you and me.  hope you think of me sincerely." (June 24, 2018, 10:07:13 AM Message). "well.. miss you indeed. stupid." (June 24, 2018, 10:08:35 AM Message).

Later that day Plaintiff added:

> I am feeling sorry that what made you even not well express well your feelings and emotion. I was quite a bit surprised that you each time said to me.. 'you can change your mind, you can do IF YOU WANT,, … I thought.. you are lonely guy.  Many of women would've left you. I know why. Take care of yourself please. Yourself, is the most important of your life. That is the king, you are so special and so precious.

(June 24, 2018, 10:29:19-25 PM Message (capitalization in original)).

This message alone made clear that not only did Plaintiff recall the events of the evening (thus undermining her theory that Mr. Portnow drugged her), but that Mr. Portnow continually assured her that it was up to her whether they would engage sexually.

Plaintiff even mentioned that various other older men had made advances toward her in the past and that Mr. Portnow reminded her of them, but "of course" the difference between them was that, unlike her dealings with those men, she did not reject Mr. Portnow. (June 24, 2018, 10:29:17-10:29:19 Messages).  And just three days after confirming that their encounter was consensual, on June 27, 2018, Plaintiff told Mr. Portnow that he "should be thankful of [her] to proposal marry. It meant [she] really cared about [him] and was true heart." (June 27, 2018, 1:59:57 AM Message).  The next day, Plaintiff told Mr. Portnow:

> meeting with you allow me to learn something a lot and what is love.  It was really frist [sic] for me.  I never fallen in real love.  I sincerely cared about you and I could dare say proposal to you, it is milestone of my life.  I was very similar to you, I always wanted to be loved from somebody.  But I have done for you, it was invaluable moment.  be well and stay healthy.  you are so special.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Analisa Torres
May 14, 2024
Page 4

(June 28, 2018, 12:25:57-12:28:16 PM Message).

Then, on August 2, 2018, Mr. Portnow received an email from "Zizi," an individual who worked at Plaintiff's "Magazine," requesting that Mr. Portnow write Plaintiff a letter of recommendation in support of her immigration application. (Aug. 2, 2018, 10:00 PM Message). Just four days later, Plaintiff followed up on "Zizi"'s request, asking that Mr. Portnow "writ[e] a letter for [Plaintiff's] US immigration," and that she was "always respecting [Mr. Portnow]" and "appreciate[es him] always on the mind sincerely." (Aug. 6, 2018, 11:58 AM Message). Mr. Portnow declined to provide the letter.

A month later, Plaintiff began sending dozens of messages demanding Mr. Portnow send her a photo. In fact, at one point on September 4, 2018, Plaintiff sent Mr. Portnow 52 messages in a 54-minute period (between 8:27 AM and 9:31 AM). In the middle of these texts, and after now months of Mr. Portnow not engaging with her increasingly concerning messages, she told him that she didn't remember all of what happened between them and that she was drunk. (Sept. 4, 2018, 8:43:04 AM Message). Seconds later, she sent him a series of messages asking him to send her a photo, telling him, "You should know you were lucky to be related to me," and that he should talk to her because that's something an ideal man would do (Sept. 4, 2018, 8:44:31-9:31:57 AM Messages). Days later, Plaintiff sent Mr. Portnow something of a "breakup" text. (Sept. 15, 2018, 11:24:08-11:38:14 PM Messages). A month later, she emailed a representative from Defendant National Academy of Recording Arts & Sciences, Inc. (the "Academy"), Mr. Portnow's then-employer, to report that she had been sexually harassed by Mr. Portnow. (Oct. 22, 2018, 4:18 PM Message).

These communications are far from the false picture painted in the Amended Complaint. Indeed, an independent third-party law firm hired by the Academy and the New York City Police Department each conducted their own investigations of Plaintiff's allegations and determined that her claims were meritless.

### III.   Mr. Portnow Would Be Substantially Prejudiced If Plaintiff's Case Is Dismissed Without Prejudice

Given the communications highlighted above, the pending motion of Plaintiff's counsel to withdraw is not surprising. (Dkt. #38-39). In fact, on March 6, 2024, we sent a letter to Plaintiff's counsel indicating our intention to file a motion for sanctions under Rule 11 for counsel's failure to conduct an adequate pre-suit investigation. That, coupled with Plaintiff's representation that, following the Court's decision to retain jurisdiction over this case and Mr. Portnow's filing of a pre-motion letter under Rule 10, her counsel indicated that she *and her counsel* "are faced with the possibility of grave further harm," (Dkt. #37 at 2), make clear that counsel, along with the four other attorneys Plaintiff retained before them, questioned the legitimacy of these claims and wished to withdraw.

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**

Hon. Analisa Torres
May 14, 2024
Page 5

As noted, the *Zagano* factors are "influenced by the probable merit of the claims that a plaintiff is seeking to withdraw," because "[w]here a defendant has cast substantial doubt on the validity of a plaintiff's claims or where such claims are dubious on their face, the prospect of relitigation offers little value but threatens much cost." *Rep. of Colombia*, 2011 WL 4828814, at *2. That has plainly occurred here.

While this case has been pending for less than a year, Plaintiff's repeated attempts to file suit have been ongoing for close to five years, causing significant personal, emotional, financial, and professional harm to Mr. Portnow. This harm has been exacerbated in no small part due to Plaintiff's attorney's trip around the media circuit following the filing of this lawsuit, including his describing Mr. Portnow as "do[ing] a disservice to every woman and every musician who is being oppressed by him and others." Ben Sisario, *Musician Sues Former Grammys Head, Accusing Him of Rape*, N.Y. TIMES (Nov. 8, 2023), https://www.nytimes.com/2023/11/08/arts/music/neil-portow-grammys-rape-lawsuit.html. *See also* Ethan Millman, *Phoebe Bridgers Tells Ex-Grammy Head Accused of Sexual Assault to 'Rot in Piss,'* ROLLING STONE, (Feb. 5, 2024), https://www.rollingstone.com/music/music-features/phoebe-bridgers-calls-out-ex-grammy-ceo-1234961277/; Lyndsey Havens, *Phoebe Bridgers Tells Former Grammy CEO Neil Portnow to 'Rot in Piss' Backstage at 2024 Awards Show*, BILLBOARD (Feb. 5, 2024), https://www.billboard.com/music/awards/phoebe-bridgers-neil-portnow-backstage-2024-grammys-boygenius-1235598906/; Herb Scribner, *Lawsuit Accuses Former Grammys President of Drugging, Raping Musician*, THE WASHINGTON POST (Nov. 8, 2023, 7:15 PM ET), https://www.washingtonpost.com/entertainment/music/2023/11/08/grammy-awards-neil-portnow-lawsuit/; Jem Aswad, *Former Grammy Chief Neil Portnow Sued for Rape*, VARIETY (Nov. 8, 2023, 4:43 ET), https://variety.com/2023/music/news/grammy-neil-portnow-sued-for-rape-1235784947/; Ethan Millman, *Former Grammys CEO Neil Portnow Accused of Drugging and Raping Artist in New Lawsuit*, ROLLING STONE (Nov. 8, 2023), https://www.rollingstone.com/music/music-news/former-grammys-ceo-neil-portnow-rape-accusation-lawsuit-1234872229/. The facts make clear that, contrary to her attorney's hyperbole, Mr. Portnow did nothing wrong here and certainly never oppressed the Plaintiff.

Plaintiff's desire to dismiss this case without prejudice, only to avoid a potential ruling dismissing the case on the merits and/or requiring her to reveal her name and publicly stand behind her actions, should be rejected. *See Galasso*, 310 F. Supp. 2d at 572, 574 (collecting cases); *see also Zagano*, 900 F.2d at 15 (affirming the district court's decision to dismiss with prejudice, finding plaintiff's actions to have been an "instrument of vexation," where plaintiff "was perfectly happy to have the lawsuit out there until all of a sudden she had to do something with it").

As evidenced by the sampling of messages above, and the withdrawal or declination of now five attorneys to pursue this litigation, Plaintiff does not have a meritorious case, and is engaging in vexatious and harassing behavior that has caused substantial harm to Mr. Portnow. To allow this to continue would mean to reward such behavior, which Rule 41(a)(2) is

Morvillo Abramowitz Grand Iason & Anello P.C.

Hon. Analisa Torres
May 14, 2024
Page 6

intended to protect against. For these reasons, the Court should deny Plaintiff's request to dismiss without prejudice.

### IV. Should the Court Grant Plaintiff's Request, Mr. Portnow Is Entitled to Attorney's Fees and Costs

In the alternative, should the Court be inclined to grant Plaintiff's request to dismiss the action without prejudice, the Court may impose an award of attorneys' fees and costs as "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Where a plaintiff dismisses its case without prejudice, "courts often grant the defendant an award of fees in an effort to reimburse the defendant for the litigation costs it has incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Mondejar v. Dow Chemical Co.*, No. 97 Civ. 62 (JG), 1998 WL 812577, at *4 (E.D.N.Y. Apr. 29, 1998) (internal quotation marks omitted and alterations adopted); *see Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985).

Given Plaintiff's behavior over the last five years, including her most recent threat to "re-file the case if necessary," Mr. Portnow should be granted fees and costs in order to reimburse him for the immense time and cost that has gone into defending this action, as well as Plaintiff's other attempts over the last five years. (*See* Dkt. #49 at 4).

Thank you for Your Honor's consideration in this matter.

Respectfully yours,

*/s/ Edward M. Spiro*

Edward M. Spiro
Catherine M. Foti
Abbe R. Ben-David

cc: All counsel (by ECF)
    JAA Doe (by email)